1    MARC E. MAYER (SBN 190969)
       mem@msk.com
2    KARIN G. PAGNANELLI (SBN 174763)
       kgp@msk.com
3    MITCHELL SILBERBERG & KNUPP LLP
     2049 Century Park East, 18th Floor
4    Los Angeles, CA  90067-3120
     Telephone: (310) 312-2000
5    Facsimile: (310) 312-3100

6    Attorneys for Plaintiffs

7

8                   UNITED STATES DISTRICT COURT

9                 CENTRAL DISTRICT OF CALIFORNIA

10              WESTERN DIVISION - SPRING STREET

11   PROXIMA BETA PTE. LIMITED,              CASE NO. 2:21-cv-2056 MWF (JEM)
     d/b/a "Tencent Games" a Singapore
12   Corporation, and KRAFTON, INC., a       (Assigned to Judge Michael W. Fitzgerald)
     Korea Corporation,
13                                           **PROOF OF SERVICE OF**
                    Plaintiffs,              **SUMMONS AND COMPLAINT ON**
14                                           **DEFENDANT, ANDRE**
              v.                             **SWIRSZCZUK a/k/a GIRABALDI**
15
     ANDREW MARTIN a/k/a Asyhole;
16   ANDRE SWIRSZCZUK a/k/a
     Girabaldi; SAMAD AHMED a/k/a            Complaint filed: March 5, 2021
17   Samad Hossain a/k/a Haxsamad, a/k/a
     Sharpshooter Bangladesh and DOES 1
18   through 6, inclusive,

19                  Defendants.

20

21

22

23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

13366053.1

**TO THE ABOVE-ENTITLED COURT:**

**PLEASE TAKE NOTICE that** Plaintiffs Proxima Beta d/b/a "Tencent Games" and Krafton, Inc. (together, "Plaintiffs" or "Tencent") effectuated service of the following initiating documents on Defendant **Andre Swirszczuk** a/k/a Girabaldi:

1. Complaint;
2. Complaint translated in German;
3. Summons on Complaint;
4. Summons on Complaint translated in German;
5. Certificate of Interested Parties and Corporate Disclosures;
6. Certificate of Interested Parties and Corporate Disclosures translated in German;
7. Civil Cover Sheet; and
8. Civil Cover Sheet translated in German.

These initiating documents were served by the following methods:

A. Service under Article 5 of the Hague Convention in Rudolstadt, Germany on April 29, 2021, *see* Exhibit A.

DATED: July 30, 2021                  MITCHELL SILBERBERG & KNUPP LLP


                                      By:   /s/ Marc E. Mayer
                                            Marc E. Mayer
                                            Karin G. Pagnanelli
                                            Attorneys for Plaintiffs

Mitchell
Silberberg &
Knupp LLP

13366053.1

2

# EXHIBIT A



**ANTRAG**
**AUF ZUSTELLUNG EINES GERICHTLICHEN ODER AUSSERGERICHTLICHEN**
**SCHRIFTSTÜCKS IM AUSLAND**

**REQUEST**
**FOR SERVICE ABROAD OF JUDICIAL OR EXTRAJUDICIAL DOCUMENTS**

**DEMANDE**
**AUX FINS DE SIGNIFICATION OU DE NOTIFICATION À L'ÉTRANGER**
**D'UN ACTE JUDICIAIRE OU EXTRAJUDICIAIRE**

Übereinkommen über die Zustellung gerichtlicher und außergerichtlicher Schriftstücke im Ausland
in Zivil- oder Handelssachen, unterzeichnet in Den Haag am 15. November 1965.

Convention on the service abroad of judicial and extrajudicial documents in civil or
commercial matters, signed at The Hague, on the 15th of November, 1965.

Convention relative à la notification à l'étranger des actes judiciaires ou extra-
judiciaires en matière civile ou commerciale, signée à La Haye, le 15 novembre 1965.

| | |
|---|---|
| Bezeichnung und Anschrift der ersuchenden Stelle<br>Identity and address of the applicant<br>Identité et adresse du requérant<br><br>**ABC Legal Services**<br>**633 Yestler Way**<br>**Seattle, WA 98104**<br>**United States of America** | Anschrift der Bestimmungsbehörde<br>Address of receiving authority<br>Adresse de l'autorité destinataire<br><br>**Amtsgericht Rudolstadt**<br>**Marktstraße 54**<br>**07407 Rudolstadt**<br>**Germany** |

Die ersuchende Stelle beehrt sich, der Bestimmungsbehörde - in zwei Stücken - die unten angegebenen Schriftstücke mit der Bitte zu übersenden, davon nach Artikel 5 des Übereinkommens ein Stück unverzüglich dem Empfänger zustellen zu lassen, nämlich

The undersigned applicant has the honour to transmit - in duplicate - the documents listed below and, in conformity with article 5 of the above-mentioned Convention, requests prompt service of one copy thereof on the addressee, i. e.,

Le requérant soussigné a l'honneur de faire parvenir - en double exemplaire - à l'autorité destinataire les documents ci-dessous énumérés, en la priant, conformément à l'article 5 de la Convention précitée, d'en faire remettre sans retard un exemplaire au destinataire, à savoir:

| |
|---|
| (Name und Anschrift)<br>(identity and address)<br>(identité et adresse) |

| | | |
|---|---|---|
| ☐ | a) | in einer der gesetzlichen Formen (Artikel 5 Absatz 1 Buchstabe a) *).<br>in accordance with the provisions of sub-paragraph a) of the first paragraph of article 5 of the Convention *).<br>selon les formes légales (article 5, alinéa premier, lettre a) *). |
| ☐ | b) | in der folgenden besonderen Form (Artikel 5 Absatz 1 Buchstabe b) *).<br>in accordance with the following particular method (sub-paragraph b) of the first paragraph of article 5) *).<br>selon la forme particulière suivante (article 5, alinéa premier, lettre b) *). |
| ☐ | c) | gegebenenfalls durch einfache Übergabe (Artikel 5 Absatz 2) *).<br>by delivery to the addressee, if he accepts it voluntarily (second paragraph of article 5) *)<br>le cas échéant, par remise simple (article 5, alinéa 2) *). |

Die Behörde wird gebeten, der ersuchenden Stelle ein Stück des Schriftstücks - und seiner Anlagen *) - mit dem Zustellungszeugnis auf der Rückseite zurückzusenden oder zurücksenden zu lassen.

The authority is requested to return or to have returned to the applicant a copy of the documents - and of the annexes *) - with a certificate as provided on the reverse side.

Cette autorité est priée de renvoyer ou de faire renvoyer au requérant un exemplaire de l'acte - et de ses annexes *) - avec l'attestation figurant au verso.

Verzeichnis der Schriftstücke
List of documents
Enumération des pièces

| | | |
|---|---|---|
| Zustellungszeugnis | | Ausgefertigt in Rudolstadt<br>Done at<br>Fait à<br>Dornfeld, JAR<br>Unterschrift und / oder Stempel.<br>Signature and / or stamp.<br>Signature et / ou cachet. | am 27.05.2021 |

*) Unzutreffendes streichen. / Delete if inappropriate. / Rayer les metions inutiles.



# ZUSTELLUNGSZEUGNIS

## CERTIFICATE

## ATTESTATION

Die unterzeichnete Behörde beehrt sich, nach Artikel 6 des Übereinkommens zu bescheinigen,
The undersigned authority has the honour to certify, in conformity with article 6 of the Convention,
L'autorité soussignée a l'honneur d'attester conformément à l'article 6 de ladite Convention,

☒   1. dass der Antrag erledigt worden ist *)
      that the document has been served *)
      que la demande a été exécutée *)

| | | |
|---|---|---|
| - | am (Datum)<br>the (date)<br>le (date) | 29.04.2021 |
| - | in (Ort, Straße, Nummer)<br>at (place, street, number)<br>à (localité, rue, numéro) | O7407 Rudolstadt<br>Dr. Wilhelm-Külz-Straße<br>12 |

| | | |
|---|---|---|
| - | in einer der folgenden Formen nach Artikel 5:<br>in one of the following methods authorised by article 5:<br>dans une des formes suivantes prévues à l'article 5: | |
| ☒ | a) | in einer der gesetzlichen Formen (Artikel 5 Absatz 1 Buchstabe a) *).<br>in accordance with the provisions of sub-paragraph a) of the first paragraph of article 5 of the Convention *).<br>selon les formes légales (article 5, alinéa premier, lettre a) *). |
| ☐ | b) | in der folgenden besonderen Form *):<br>in accordance with the following particular method *):<br>selon la forme particulière suivante *): |
| ☐ | c) | durch einfache Übergabe *).<br>by delivery to the addressee, who accepted it voluntarily *).<br>par remise simple *). |

Die in dem Antrag erwähnten Schriftstücke sind übergeben worden an:
The documents referred to in the request have been delivered to:
Les documents mentionnés dans la demande ont été remis à:

| | |
|---|---|
| (Name und Stellung der Person)<br>(identity and description of person)<br>(identité et qualité de la personne) | Andre Swirzzczuk alias Girabaldi |
| Verwandtschafts-, Arbeits- oder sonstiges Verhältnis zum Zustellungsempfänger:<br>relationship to the addressee (family, business or other):<br>liens de parenté, de subordination ou autres, avec le destinataire de l'acte: | |

☐   2. dass der Antrag aus folgenden Gründen nicht erledigt werden konnte *):
      that the document has not been served, by reason of the following facts *):
      que la demande n'a pas été exécutée, en raison des faits suivants *):

☐   Nach Artikel 12 Absatz 2 des Übereinkommens wird die ersuchende Stelle gebeten, die Auslagen, die in der beiliegenden Aufstellung im einzelnen angegeben sind, zu zahlen oder zu erstatten *).
In conformity with the second paragraph of article 12 of the Convention, the applicant is requested to pay or reimburse the expenses detailed in the attached statement *).
Conformément à l'article 12, alinéa 2, de ladite Convention, le requérant est prié de payer ou de rembourser les frais dont le détail figure au mémoire ci-joint *).

Anlagen / Annexes / Annexes

| | |
|---|---|
| Zurückgesandte Schriftstücke:<br>Documents returned:<br>Pièces renvoyées: | Zustellungszeugnis |
| Gegebenenfalls Erledigungsstücke:<br>In appropriate cases, documents establishing the service:<br>Le cas échéant, les documents justificatifs de l'exécution: | Ausgefertigt in Rudolstadt                    am 27.05.2021<br>Done at<br>Fait à<br><br>Unterschrift und/oder Stempel.<br>Signature and/or stamp.<br>Signature et/ou cachet. |

*) Unzutreffendes streichen. / Delete if inappropriate. / Rayer les metions inutiles.

ANGABEN ÜBER DEN WESENTLICHEN INHALT DES ZUZUSTELLENDEN SCHRIFTSTÜCKS

## SUMMARY OF THE DOCUMENT TO BE SERVED

### ÉLÉMENTS ESSENTIELS DE L'ACTE

Übereinkommen über die Zustellung gerichtlicher und außergerichtlicher Schriftstücke im Ausland
in Zivil- oder Handelssachen, unterzeichnet in Den Haag am 15. November 1965.
(Artikel 5 Absatz 4)

Convention on the service abroad of judicial and extrajudicial documents in civil or
commercial matters, signed at The Hague, on the 15th of November, 1965.
(article 5, fourth paragraph)

Convention relative à la notification à l'étranger des actes judiciaires ou extra-
judiciaires en matière civile ou commerciale, signée à La Haye, le 15 novembre 1965.
(article 5, alinéa 4)

| | |
|---|---|
| Bezeichnung und Anschrift der ersuchenden Stelle:<br>Name and address of the requesting authority:<br>Nom et adresse de l'autorité requérante: | |
| Bezeichnung der Parteien *):<br>Particulars of the parties *):<br>Identité des parties *): | |

*) Gegebenenfalls Name und Anschrift der an der Übersendung des Schriftstücks interessierten Person.
  If appropriate, identity and address of the person interested in the transmission of the document.
  S'il y a lieu, identité et adresse de la personne intéressée à la transmission de l'acte.

| ☐ | GERICHTLICHES SCHRIFTSTÜCK **)<br>JUDICIAL DOCUMENT **)<br>ACTE JUDICIAIRE **) |
|---|---|

| | |
|---|---|
| Art und Gegenstand des Schriftstücks:<br>Nature and purpose of the document:<br>Nature et objet de l'acte: | |
| Art und Gegenstand des Verfahrens, gegebenenfalls Betrag der<br>geltend gemachten Forderung:<br>Nature and purpose of the proceedings and, where appropriate, the<br>amount in dispute:<br>Nature et objet de l'instance, les cas échéant, le montat du litige: | |
| Termin und Ort für die Einlassung auf das Verfahren **):<br>Date and place for entering appearance **):<br>Date et lieu de la comparution **): | |
| Gericht, das die Entscheidung erlassen hat **):<br>Court which has given judgment **):<br>Juridiction qui a rendu la décision **): | |
| Datum der Entscheidung **):<br>Date of judgment **):<br>Date de la décision **): | |
| Im Schriftstück vermerkte Fristen **):<br>Time limits stated in the document **):<br>Indication des délais figurant dans l'acte **): | |

| ☐ | AUSSERGERICHTLICHES SCHRIFTSTÜCK **)<br>EXTRAJUDICIAL DOCUMENT **)<br>ACTE EXTRAJUDICIAIRE **) |
|---|---|

| | |
|---|---|
| Art und Gegenstand des Schriftstücks:<br>Nature and purpose of the document:<br>Nature et objet de l'acte: | |
| Im Schriftstück vermerkte Fristen **):<br>Time limits stated in the document **):<br>Indication des délais figurant dans l'acte **): | |

**) Unzutreffendes streichen. / Delete if inappropriate. / Rayer les metions inutiles.

# SUMMARY OF THE DOCUMENT TO BE SERVED

**Convention on the service abroad of judicial and extrajudicial documents in civil or commercial matters, signed at The Hague, November 15, 1965.**

**(article 5, fourth paragraph)**

Name and address of the requesting authority:   **ABC Legal Services**
                                                **633 Yesler Way**
                                                **Seattle, WA 98104**
                                                **United States of America**

Particulars of the parties:

**PROXIMA BETA PTE. LIMITED D/B/A**          vs.   **ANDREW MARTIN A/K/A ASYHOLE; ET AL.,**
**"TENCENT GAMES" A SINGAPORE**
**CORPORATION, AND KROFTON, INC., A**
**KOREA CORPORATION,**

## JUDICIAL DOCUMENT*

Nature of the document:
`To give notice to the Defendant of the institution against him of a`
`civil lawsuit.`

Nature and purpose of the proceedings and, where appropriate, the amount in dispute:
`Plaintiff is seeking to recover civil damages and other relief,`
`amount to be determined in court.`

Date and place for entering appearance:*
`Defendant has twenty one days from receipt of the accompanying`
`Summons to make a written appearance, address is noted on the Summons.`

Court which has given judgment:*
`N/A`

Date of judgment:*
`N/A`

Time limits stated in the document:*
    Hearing Date:

## EXTRAJUDICIAL DOCUMENT*

Name and purpose of the document:
`N/A`

Time limits stated in the document:*
`N/A`



Tracking #: **0067225279**

USM-94 (Est. 11/22/77)
(Formerly OBD-116, which was formally LAA-116, both of which may still be used)
* Delete if inappropriate

## SUMMARY OF THE DOCUMENT TO BE SERVED

Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, signed at The Hague, the 15th of November 1965

**Identité et adresse du destinataire / Identity and address of the addressee / -----:**

> ANDRE SWIRSZCZUK A/K/A GIRABALDI
>
> DR. WILHELM-KULZ-STRASSE 12
> 07407, RUDOLSTADT, GERMANY

### IMPORTANT

LE DOCUMENT CI-JOINT EST DE NATURE JURIDIQUE ET PEUT AFFECTER VOS DROITS ET OBLIGATIONS. LES «ELEMENTS ESSENTIELS DE L'ACTE» VOUS DONNENT QUELQUES INFORMATIONS SUR SA NATURE ET SON OBJET. IL EST TOUTEFOIS INDISPENSABLE DE LIRE ATTENTIVEMENT LE TEXTE MEME DU DOCUMENT. IL PEUT ETRE NECESSAIRE DE DEMANDER UN AVIS JURIDIQUE.

SI VOS RESSOURCES SONT INSUFFISANTES, RENSEIGNEZ-VOUS SUR LA POSSIBILITE D'OBTENIR L'ASSISTANCE JUDICIAIRE ET LA CONSULTATION JURIDIQUE SOIT DANS VOTRE PAYS SOIT DANS LE PAYS D'ORIGINE DU DOCUMENT.

LES DEMANDES DE RENSEIGNEMENTS SUR LES POSSIBILITES D'OBTENIR L'ASSISTANCE JUDICIAIRE OU LA CONSULTATION JURIDIQUE DANS LE PAYS D'ORIGINE PEUVENT ETRE

### IMPORTANT

*THE ENCLOSED DOCUMENT IS OF A LEGAL NATURE AND MAY AFFECT YOUR RIGHTS AND OBLIGATIONS. THE 'SUMMARY OF THE DOCUMENT TO BE SERVED' WILL GIVE YOU SOME INFORMATION ABOUT ITS NATURE AND PURPOSE. YOU SHOULD HOWEVER READ THE DOCUMENT ITSELF CAREFULLY. IT MAY BE NECESSARY TO SEEK LEGAL ADVICE.*

*IF YOUR FINANCIAL RESOURCES ARE INSUFFICIENT YOU SHOULD SEEK INFORMATION ON THE POSSIBILITY OF OBTAINING LEGAL AID OR ADVICE EITHER IN THE COUNTRY WHERE YOU LIVE OR IN THE COUNTRY WHERE THE DOCUMENT WAS ISSUED.*

*ENQUIRIES ABOUT THE AVAILABILITY OF LEGAL AID OR ADVICE IN THE COUNTRY WHERE THE DOCUMENT WAS ISSUED MAY BE DIRECTED TO:*

UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA

*Il est recommandé que les mentions imprimées dans cette note soient rédigées en langue française et en langue anglaise et le cas échéant, en outre, dans la langue ou l'une des langues officielles de l'Etat d'origine de l'acte. Les blancs pourraient être remplis soit dans la langue de l'Etat où le document doit être adressé, soit en langue française, soit en langue anglaise.*

*It is recommended that the standard terms in the notice be written in English and French and where appropriate also in the official language, or one of the official languages of the State in which the document originated. The blanks could be completed either in the language of the State to which the documents is to be sent, or in English or French.*

  Tracking #: **0067225279**

USM-94 (Est. 11/22/77)
(Formerly OBD-116, which was formally LAA-116, both of which may still be used)
* Delete if inappropriate

# REQUEST
# FOR SERVICE ABROAD OF JUDICIAL OR EXTRAJUDICIAL DOCUMENTS

**Convention on the service abroad of judicial and extrajudicial documents in civil or commercial matters, signed at The Hague, November 15, 1965.**

| Identity and address of the applicant | Address of receiving authority |
|---|---|
| **ABC Legal Services**<br>**633 Yesler Way**<br>**Seattle, WA 98104**<br>**United States of America**<br><br>Authorized applicant pursuant to public law 97-351 of Feb. 26, 1983<br>which amended rule 4(c) 2(a) Federal Rules of Civil Procedure | **Thüringer Justizministerium**<br>**WernerSeelenbinder-Strasse 5**<br>**99096 Erfurt, Germany**<br>**+49 (361) 37-95000** |

The undersigned applicant has the honour to transmit-in-duplicate the documents listed below and, in conformity with article 5 of the above-mentioned Convention, requests prompt service of one copy thereof on the addressee, i.e.;

(identity and address)

**ANDRE SWIRSZCZUK A/K/A GIRABALDI**
**DR. WILHELM-KULZ-STRASSE 12**
**07407, RUDOLSTADT, GERMANY**

DOB:                          Phone:

☐ (a) in accordance with the provisons of sub-paragraph (a) of the first paragraph of article 5 of the Convention.*

☐ (b) in accordance with the following particular method (sub-paragraph (b) of the first paragraph of article 5):*

_____

_____

☐ (c) by delivery to the addressee, if he accepts it voluntarily (second paragraph of aticle 5).*

The authority is requested to return or to have returned to the applicant a copy of the documents – and of the annexes* – with a certificate as provided on the reverse side.

Hearing Date:

List of Documents:

**SUMMONS IN A CIVIL ACTION; COMPLAINT FOR: (1) TRAFFICKING IN CIRCUMVENTION DEVICES: (2) INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS: (3) UNFAIR COMPETITION; CIVIL COVER SHEET; CERTIFICATE OF INTERESTED PARTIES AND CORPORATE DISCLOSURES**

Done at Seattle, Washington USA, on Mar 25 2021

Signature and/or stamp

_____





Tracking #: **0067225279**

USM-94 (Est. 11/22/77)
(Formerly OBD-116, which was formally LAA-116, both of which may still be used)
* Delete if inappropriate

# CERTIFICATE

**The undersigned authority has the honour to certify, in conformity with article 6 of the Convention,**

1)  that the document has been served*

the  (date) _____

at  (place, street, number) _____

_____

in one of the following methods authorized by article 5:

☐ (a) in accordance with the provisions of sub-paragraph (a)
of the first paragraph of article 5 of the Convention.*

☐ (b) in accordance with the following particular method:*

_____
_____

☐ (c) by delivery to the addressee, who accepted it voluntarily.*

The documents referred to in the request have been delivered to:
(identity and description of person)

_____
_____

relationship to the addressee family, business, or other

_____

2)  that the document has not been served, by reason of the following facts:*

_____
_____

**In conformity with the second paragraph of article 12 of the Convention, the applicant is requested to pay or reimburse the expenses detailed in the attached statement.***

Annexes

Documents returned:

_____
_____     Done at _____, the _____
_____
_____     Signature and/or stamp

In appropriate cases, documents establishing
the service:

_____
_____     _____
_____
_____




Tracking #: **0067225279**

USM-94 (Est. 11/22/77)
(Formerly OBD-116, which was formally LAA-116, both of which may still be used)
* Delete if inappropriate

MARC E. MAYER (SBN 190969)
  mem@msk.com
KARIN G. PAGNANELLI (SBN 174763)
  kgp@msk.com
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, CA 90067-3120
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION - SPRING STREET

| | |
|---|---|
| PROXIMA BETA PTE. LIMITED, d/b/a "Tencent Games" a Singapore Corporation, and KRAFTON, INC., a Korea Corporation,<br><br>         Plaintiffs,<br><br>      v.<br><br>ANDREW MARTIN a/k/a Asyhole; ANDRE SWIRSZCZUK a/k/a Girabaldi; SAMAD AHMED a/k/a Samad Hossain a/k/a Haxsamad, a/k/a Sharpshooter Bangladesh and DOES 1 through 6, inclusive,<br><br>         Defendants. | CASE NO. 2:21-cv-2056<br><br>**COMPLAINT FOR:**<br><br>**(1) TRAFFICKING IN CIRCUMVENTION DEVICES;**<br><br>**(2) INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS;**<br><br>**(3) UNFAIR COMPETITION**<br><br>**Demand For Jury Trial** |

Proxima Beta PTE. Limited d/b/a "Tencent Games" ("Tencent") and

Krafton, Inc. ("Krafton") (collectively, "Plaintiffs") aver as follows:

## **PRELIMINARY STATEMENT**

1.     Collectively, Plaintiffs own, operate, and/or publish the online

multiplayer game titled "Player Unknown's Battlegrounds Mobile" ("PUBGM").

By this lawsuit, Plaintiffs seek to put a stop to the Defendants' unlawful, for-profit

sale and distribution of malicious software products designed to harm PUBGM's

Mitchell
Silberberg &
Knupp LLP

12945486.4

multiplayer experience by enabling members of the public to gain unfair competitive advantages (*i.e.* to cheat) in PUBGM.

2.    Defendants are a group of individuals working in concert under various business or trade names, including "GMSPack," "Sharpshooter," "AutoSkillz" and "CheatNinja."  CheatNinja, purportedly a joint effort between the owners of GMSPack, Sharpshooter, and AutoSkillz, has described itself as "the leading mobile game cheat developer and publisher since 2018."  Defendants, largely doing business under the CheatNinja business name and via the CheatNinja website (www.cheatninja.com), are in the business of creating, marketing, selling, distributing, otherwise exploiting a portfolio of malicious cheats and hacks for PUBGM, including the "SharpShooter PUBG Mobile Android Cheat" and the "SharpShooter PUBG Mobile iOS Cheat" (collectively, the "Cheating Software"). The Cheating Software enables players to manipulate PUBGM to their personal advantage, such as by automatically aiming weapons, revealing the locations of opponents, and allowing the player to see a vast array of information that otherwise would be obscured.

3.    Defendants' conduct has caused, and is continuing to cause, massive and irreparable harm to Plaintiffs and their business interests.  The commercial success of Plaintiffs' business depends upon its games being enjoyable and fair for all players, and Plaintiffs spend an enormous amount of time and money to ensure that this is the case.  Defendants' sale and distribution of the Cheating Software, especially in the United States, has caused Plaintiffs to lose millions of dollars in revenue, and to suffer irreparable damage to their goodwill and reputation.

4.    In creating, marketing, selling, servicing, and distributing the Cheating Software, Defendants have engaged in numerous unlawful acts under United States and California law.  Defendants have violated Section 1201 of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1201(b)(1), by selling, importing, offering, providing, and otherwise trafficking in technologies that

circumvent or evade technologies used by Plaintiffs to detect the Cheating Software and protect the integrity and commercial value of PUBGM. Defendants also have knowingly, intentionally, and maliciously interfered with and disrupted the user contracts Plaintiffs have with their customers in the United States, which explicitly prohibit the precise type of cheating that Defendants enable by their Cheating Software. Defendants not only know that their conduct is unlawful, but they engage in such conduct with the deliberate intent to harm Plaintiffs and their business. Plaintiffs are entitled to monetary damages, injunctive and other equitable relief, and punitive damages against Defendants.

## JURISDICTION AND VENUE

5. This is a civil action seeking damages, injunctive relief, and other equitable relief under the anti-circumvention provisions of the DMCA, 17 U.S.C. § 1201; and the laws of the State of California.

6. This Court has subject matter jurisdiction over Plaintiffs' claims for copyright infringement and violation of the DMCA pursuant to 28 U.S.C. §§ 1331 and 1338(a). Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiffs' state law claims for intentional interference with contract and unfair competition, which are so related to Plaintiffs' claims under the DMCA as to be part of the same case or controversy.

7. This Court has personal jurisdiction over Defendants because they have purposefully directed their activities at the United States, and at California in particular, have purposefully availed themselves of the benefits of doing business in California, and have established a continuing presence in California. Plaintiffs are informed and believe, and on that basis allege, that, without limitation:

(a) Defendants conduct extensive and ongoing business with users in the United States and the State of California;

(b)   Defendants distribute the Cheating Software in the United States and the State of California, advertise and market the Cheating Software in the United States and the State of California, and communicate directly with users in the United States and in the State of California, including for the purposes of soliciting purchases of the Cheating Software by such users and providing technical support for the Cheating Software;

(c)   Defendants have entered into, and continue to enter into, contracts with individuals in the United States and in the State of California, including contracts pursuant to which these individuals license from Defendants the right to install and use the Cheating Software.  In return for such licenses, Defendants receive ongoing recurring daily, weekly, or monthly payments from individuals in the United States and the State of California; and

(d)   Defendants contract with entities located in the United States and the State of California in connection with their businesses.  This includes, for example, domain name registries, hosting or content delivery services, as well as credit card processors and merchant banks.

8.   Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because this is a judicial district in which a substantial part of the events giving rise to the claims occurred, and/or in which Plaintiffs' injury was suffered.

**THE PARTIES**

9.   Plaintiff Proxima Beta d/b/a "Tencent Games" is a Singapore-based corporation and a member of the Tencent group of companies.  Tencent publishes and operates the popular online mobile game PUBG Mobile (or "PUBGM") in the United States.

10.   Plaintiff Krafton, Inc. is a South Korea-based video game development and publishing company in the business of creating, distributing, and maintaining a portfolio of computer and console games.  Krafton is the successor

Mitchell
Silberberg &
Knupp LLP
12945486.4

4

in interest to the company PUBG Corporation and is the owner of U.S. copyrights in PUBGM.

11. Plaintiffs are informed and believe, and on that basis allege, that Defendant Andrew Martin (a/k/a Asyhole) is an individual residing in Canyon Country, California. Plaintiffs are informed and believe, and on that basis allege, that Martin has been a high-level employee of two prominent providers of Cheating Software, "GMSPack" and "Autoskillz," including through CheatNinja's predecessor website at www.gmspack.com, and is or has been among the chief moderators or administrators of the CheatNinja.com website. In that role, Martin markets, advertises, promotes, and otherwise facilitates the sale of the Cheating Software.

12. Plaintiffs are informed and believe, and on that basis allege, that Defendant Andre Swirszczuk (a/k/a Geribaldi) is an individual residing in or about Rudolstadt, Germany. Plaintiffs are informed and believe, and on that basis allege, that Swirszczuk is one of the founders of two prominent providers of Cheating Software, "Autoskillz" and "Sharpshooter Corporation," and is among the lead developers and/or marketers of the Cheating Software. Plaintiffs are informed and believe, and on that basis allege, that Swirszczuk also is or has been one of the administrators of the website www.sharpshooterdevelopers.com, which has promoted the Cheating Software offered by www.gmspack.com and provided links to the CheatNinja.com website. Swirszczuk has claimed that among the goals of the Sharpshooter Project is to "create a new market for PC-like mobile Multiplayer Hacks" and create "the worlds[sic] biggest CHEATERCOMMUNITY in the History of mobile Games." Plaintiffs are informed and believe, and on that basis allege, that Swirszczuk is and/or has been among the individuals chiefly responsible for creating, producing, maintaining, marketing, advertising, supporting, and monetizing the Cheating Software.

13.     Plaintiffs are informed and believe, and on that basis allege, that Defendant Samad Ahmed a/k/a Samad Hossain a/k/a Haxsamad, a/k/a Sharpshooter Bangladesh is an individual residing in or about Cumilla, Bangladesh.  Plaintiffs are informed and believe, and on that basis allege, that Hossain distributes and re-sells the Cheating Software through the website www.cheatninja.io.

14.     Plaintiffs are informed and believe, and on that basis allege, that defendant Doe 1 a/k/a Glacier, Doe 2 a/k/a llllllll, Doe 3 a/k/a MRMTT, and Doe 4 a/k/a Sanguis are or were administrators of the CheatNinja website and message board and/or their predecessor versions at www.gmspack.com.  In that role, these individuals communicate with Plaintiffs' customers in order to support and enable their use of the Cheating Software, and serve as liaison to, and/or themselves operate as, developers of the Cheating Software.  Among other activities, Glacier and llllllll assist customers in operating the Cheating Software, give advice to customers as to how to avoid being caught or detected by Plaintiffs for using the Cheating Software, and communicate to users about updates and improvements to the Cheating Software.  Glacier and llllllll also are involved in recruiting, hiring, and communicating with individual resellers of the Cheating Software.  The true names and capacities, whether individual, corporate, associate, or otherwise, of Glacier and llllllll are unknown to Plaintiffs, which have therefore sued said Defendants by such aliases and fictitious names.

15.     Plaintiffs are informed and believe, and on that basis allege, that Doe 5 a/k/a Rolan and Doe 6 a/k/a SSshooter are, along with Martin, "Global Moderators" of Cheat Ninja, and/or its predecessor website at www.gmspack.com. In that role, these individuals market, advertise, promote, and otherwise facilitate the sale of the Cheating Software, including by recruiting, hiring, and communicating with individual "resellers" of the Cheating Software.  The true names and capacities, whether individual, corporate, associate, or otherwise, of

Rolan and SSshooter are unknown to Plaintiffs, which have therefore sued said Defendants by such aliases and fictitious names.

16.     The true names and capacities, whether individual, corporate, associate, or otherwise, of the Doe defendants are unknown to Plaintiffs, which have therefore sued said defendants by such aliases and fictitious names.  These defendants include individuals whose real identities are not yet known to Plaintiffs, but who are acting in concert with one another, often under the guise of Internet aliases, in committing the unlawful acts alleged herein.  Plaintiffs will seek leave to amend this complaint to state their true names and capacities once said Defendants' identities and capacities are ascertained.  Plaintiffs are informed and believe, and on that basis aver, that all Defendants sued herein are liable to Plaintiffs as a result of their participation in all or some of the acts set forth in this Complaint.  (All of the aforementioned Defendants, both the named Defendants and the Doe Defendants, are referred to herein collectively as "Defendants.")

17.     Plaintiffs are informed and believe, and on that basis allege, that at all times mentioned in this complaint, each of the Defendants was the agent of each of the other Defendants and, in taking all actions averred in this Complaint, each was acting within the course and scope of such agency.

## FACTS APPLICABLE TO ALL CLAIMS
### PUBG Mobile

18.     Tencent Games is the operator and publisher of the video game titled "Player Unknown's Battlegrounds Mobile" ("PUBGM") in the United States.  PUBGM is the mobile version of the immensely popular game "Player Unknown's Battlegrounds" ("PUBG"), owned and distributed by PUBG Corporation.

19.     PUBGM is a mobile game app available for both Android and Apple (iOS) devices, such as smartphones, tablets, and other portable devices.  Like the original game, PUBGM is a fast-paced online action and survival game.  In its

Mitchell
Silberberg &
Knupp LLP
12945486.4

classic, "Battle Royale" mode, up to 100 players compete to be the last one standing in a fight-to-the-death competition. In this mode, players parachute onto a large, computer generated battlefield; scrounge for weapons, armor, vehicles, and other survival tools (*e.g.*, bandages, backpacks, camouflage), and attempt to eliminate other players and remain alive while the battlefield shrinks in size. PUBGM also offers smaller eight-player matches and a "zombies" mode, where a small group of players attempts to remain alive against dozens of computer-controlled zombie opponents.

20.     PUBGM matches are intense and highly competitive affairs, with each participant vying for a limited number of weapons, ammunition, vehicles, health packs, and other materials that the player needs to survive. Players of PUBGM may play the game casually or in "ranked" matches for a place on a global leaderboard. Additionally, PUBGM is played in thousands of "esports" tournaments around the world, many of which offer cash prizes to the winner or winners. These tournaments draw hundreds or thousands of viewers and dedicated fans. Highly ranked players also often enjoy paid positions with team organizations, lucrative endorsement deals, and income from paid subscriptions to hugely popular live streams of game play.

21.     The success of PUBGM rests in part on Plaintiffs' ability to offer a consistently compelling player experience so that their customers remain invested in the game and play it for a sustained period of time. Especially given the substantial competition and live stream economy that has grown with, and around, PUBGM, a vital part of that player experience is the fairness and integrity of the game. Accordingly, Plaintiffs invest an enormous amount of time and money to ensure that all players stand on equal footing and have a fair chance to defeat their opponents and progress in the game. Maintaining proper game balance is absolutely critical to the game's success. If that balance is artificially upset, or if there is a perception that players are cheating or have an unfair advantage, then

players will grow frustrated with the game and stop playing. That, in turn, could disrupt and/or destroy the entire PUBGM community.

### **Plaintiffs' Efforts To Protect Against Hackers And Cheaters**

22.     Because PUBGM is such a popular game, unscrupulous individuals and companies such as Defendants constantly seek to exploit the game for their own personal gain and profit, knowing that by doing so they are ruining the experience for other players and harming Plaintiffs and their business interests. For this reason, Plaintiffs undertake tremendous effort to protect the integrity of the game through both technical and contractual means.

23.     First, in order to prevent users from cheating or otherwise unfairly exploiting PUBGM, the game contains a number of technological measures designed to detect whether players are using software that allows them to cheat in the game. When detected, the players are prevented from accessing and playing PUBGM. As a result, for any hack or cheat software to be effective, it must be designed to prevent or avoid detection. For years, Defendants have been playing a "cat-and-mouse" game, such that each time new or improved technology that detects whether a player use of the Cheating Software is developed or deployed, Defendants update or modify the Cheating Software to avoid and/or circumvent those technological measures.

24.     Second, in order to access, download, or play PUBGM, users must create and register a PUBGM account, and in doing so must expressly manifest their assent to the End User License Agreement and Terms of Use (collectively, the "TOU.") The entire text of the TOU is displayed to users at the time they register for a PUBG account, as well as each time the TOU is updated. The TOU is available in its entirety online at pubgmobile.com/terms.html.

25.     The TOU includes a conditional, limited license agreement between Tencent and its users. Under the TOU, Tencent licenses the right to download,

Mitchell
Silberberg &
Knupp LLP

12945486.4

9

copy, install, and play PUBGM, subject to certain terms, restrictions, and conditions. Among other provisions, the TOU expressly prohibits players from "us[ing] cheats, exploits, automation software or any unauthorized third party software designed to modify or interfere with [PUBGM]" or from "disabl[ing] or circumvent[ing]" any technical measures designed to prevent unauthorized uses of PUBGM.

26. PUBGM is made available to the public exclusively through Plaintiffs' proprietary servers and matchmaking system. Thus, it is not possible for a user to lawfully obtain access to or play PUBGM without expressly consenting to the TOU.

## **Defendants And Their Unlawful Conduct**

27. Plaintiffs are informed and believe, and on that basis allege, that Defendants collectively are or were engaged in developing, updating, marketing, distributing, selling, and supporting the PUBGM Cheating Software, including the "SharpShooter PUBG Mobile Android Cheat" and the "SharpShooter PUBG Mobile iOS Cheat." Defendants have marketed, sold, and offered customer support for the PUBGM Cheating Software via the CheatNinja website and through authorized "resellers" that, in turn, advertise the Cheating Software through message board postings on the CheatNinja website and other websites dedicated to hacking and cheating.

28. The CheatNinja website claimed that CheatNinja is the "leading mobile cheat developer & publisher since 2018." CheatNinja is a "rebrand" of three pre-existing cheating and hacking developers and sellers that purportedly "joined forces": "Autoskillz," "SharpShooter," and "GMSPack." According to the CheatNinja website, "Autoskillz" is "one of the world's first game cheat developer[sic] to explore the mobile landscape;" "Sharpshooter" is a "top mobile cheat developer" whose software "laid the foundation of the mobile cheat

industry;" and "GMSPack" is a "professional cheat sales team, dedicated to providing technical support, marketing and promotion services for individual developers and teams through cheats' life cycle." Plaintiffs are informed and believe, and on that basis allege, that in addition to selling preexisting software products, CheatNinja offers publishing services (*i.e.,* marketing, distribution, customer support, and other related services) to third party developers who have created cheating software and wish to market and sell that software to the public.

29.     Among the products offered for sale by CheatNinja (and, formerly, by GMSPack and other predecessor websites) is the PUBGM Cheating Software. The Cheating Software, first offered through www.gmspack.com and then through the CheatNinja website, purports to enable PUBGM players to cheat in the game by, *inter alia*, automatically aiming a player's weapon, expanding a player's field of vision, illuminating opponents, and displaying information such as the locations and health status of hidden or obscured opponents or the location of "valuable items." For example, CheatNinja advertises the SharpShooter PUBG Mobile Android cheat as follows:

> The first and most advanced PUBG Mobile external cheat. Win games with ease.
>
> Keep track of the status and exact location of all enemies at all times with player ESP (boxes, skeletons, HP, distance, weapons, etc.), and with precise aimbot lets you instantly lock on and kill them from hundreds of meters away. Highly customizable loot ESP makes you never miss any valuable items ever again.
>
> Lead the leaderboard, unlock game content faster, earn more rewards, and lead your teammates to one victory after another!

30.     Depicted below is a screen capture of a player using the Cheating Software in PUBGM.  Some of the advertised features of the Cheating Software can be seen in this screen capture, including the use of ESP (Extra Sensory Perception), which allows players to see objects, non-player characters, and opponents (including player names and health information) through walls and other terrain.



31.     Plaintiffs are informed and believe, and on that basis allege, that Defendants do not sell the Cheating Software directly from their websites, including the GMS Pack and CheatNinja websites.  Instead, Defendants recruit a network of authorized "resellers," who, in turn, sell licenses to use the Cheating Software.  As explained on the CheatNinja website:  "We have a large user base and a worldwide sales network to provide professional marketing and promotion services."  In order to become a reseller of the Cheating Software, a prospective reseller need only fill out a short online application and then be approved by one of the CheatNinja administrators or moderators, such as Defendants.  The "official" suggested price of a license to download and use the Cheating Software is $38.00 for a monthly subscription and $15.00 for a weekly subscription.

32.     Plaintiffs are informed and believe, and on that basis allege, that the Cheating Software has been downloaded and used by PUBGM players thousands

Mitchell
Silberberg &
Knupp LLP
12945486.4

12

of times, including by players residing in the United States. Plaintiffs also are informed and believe that Defendants have made hundreds of thousands of dollars from their distribution of, and sale of licenses to, the Cheating Software.

33.     Plaintiffs are informed and believe, and on that basis allege, that in addition to marketing and distributing the Cheating Software, Defendants and other CheatNinja representatives provide extensive and ongoing customer support and technical assistance. For example, CheatNinja maintains an online message board forum (formerly belonging to GMSPack) where representatives, including Defendants, provide customers of the Cheating Software information and support concerning a variety of topics, such as the status of updates or "patches" to the Cheating Software, how to resolve technical issues, and how to purchase and extend licenses for the Cheating Software. A very large portion of these message boards are dedicated to whether the Software is "safe" (*i.e.*, undetectable by PUBGM's anti-cheat technology) and what to do to avoid being detected by Plaintiffs for using unauthorized cheats and hacks. CheatNinja also communicates with users via the instant messaging service Telegram and the online "chat room" system known as "Discord."

34.     Plaintiffs are informed and believe, and on that basis allege, that in order for the Cheating Software to operate with PUBGM it necessarily includes technology that primarily is designed to avoid, bypass, evade, or otherwise circumvent Plaintiffs' detection measures. Defendants also specifically and aggressively advertise and promote the Cheating Software as having been designed for this unlawful purpose. For example, on the CheatNinja website, Defendants tout that among the "features" of the Cheating Software is their "Superior Security." In Defendants' own words, "[i]nstead of playing cat and mouse games with game developers, we focus on developing techniques for cheating that are difficult to detect in the first place."

Mitchell
Silberberg &
Knupp LLP
12945486.4

13

35.     Each time a PUBGM player uses the Cheating Software to cheat in PUBGM, he or she violates the TOU, including the provision that specifically prohibits players from "us[ing] cheats, exploits, automation software or any unauthorized third party software designed to modify or interfere with [PUBGM]." Accordingly, Plaintiffs are informed and believe, and on that basis allege, that as a result of Defendants' conduct, thousands or tens of thousands of breaches of these contracts have occurred.

36.     Plaintiffs are informed and believe, and on that basis allege, that Defendants are fully aware that the use of the Cheating Software violates the TOU. Indeed, in a "pinned" (top priority) post on the CheatNinja message board (titled "How to Cheat Like a Pro"), Defendant "Rolan" offered the following "advice" (emphasis added):

> "***By cheating, you are intentionally breaching the game's terms of service.*** So this is always followed by some risks. We are the safest cheat provider, but we will never claim to be '100% impossible to get banned.' Anyone who declares this is simply irresponsible."

The Cheating Software has no purpose or function other than to enable players to violate the TOU by using cheats and exploits.  Thus, Defendants' goal is to ensure that their customers continue to receive the benefits of their contracts with Plaintiffs while they simultaneously engage in continuing harmful breaches of their obligations under these contracts.

37.     By their conduct, Defendants have caused and continue to cause serious harm to PUBGM.  Such harm is immediate, massive and irreparable, and includes (but is not limited to) the following:

(a)     Defendants irreparably harm the ability of Plaintiffs' legitimate customers in the United States to enjoy and participate in the online experience carefully created by Plaintiffs.  That, in turn, causes users to grow dissatisfied with PUBGM, lose interest, and stop playing.

(b)     Defendants' conduct has forced Plaintiffs to spend enormous sums of money (and vast amounts of time) attempting to remediate the damage caused by the Cheating Software. This includes creating and releasing new versions of PUBGM that counteract the Cheating Software, responding to player complaints, employing personnel to police the games to detect the use of the Cheating Software, and "banning" (*i.e.*, permanently deleting the accounts of) users who are using the Cheating Software.

(c)     Defendants' conduct harms Plaintiffs' reputation and results in the loss of significant customer goodwill, both in the United States and worldwide.

38.     Defendants' conduct has resulted in damage to Plaintiffs in an amount to be proven at trial. By Plaintiffs' estimation, such damage is in the tens or hundreds of millions of dollars. Unless and until Defendants are preliminarily or permanently enjoined, Plaintiffs will continue to suffer severe harm from the Cheating Software.

## COUNT I
## Trafficking In Circumvention Devices

39.     Plaintiffs re-allege and incorporate by reference the allegations in paragraphs 1 through 38, as if set forth fully herein.

40.     PUBGM, including but not limited to its source code and audiovisual game play environments, is a copyrighted work.

41.     PUBGM uses a variety of technological measures that are designed to detect the use of cheating software and deny access to the game to individuals using such software. Such technological measures effectively control access to the game, including access to the dynamic audiovisual elements that comprise the game.

42.     The Cheating Software is comprised of or contains technologies, products, services, devices, components, or parts thereof that primarily are

Mitchell
Silberberg &
Knupp LLP

12945486.4

15

designed or produced for the purpose of circumventing technological measures that effectively control access to PUBGM.

43. The Cheating Software (and/or the portions thereof that circumvent PUBG's anti-cheat technologies) have no commercially significant purpose or use other than to circumvent a technological measure that effectively controls access to a copyrighted work and that protects the exclusive rights of a copyright owner. Without such circumvention measures, the Cheating Software cannot be used and will not operate, including because it will be detected and the user will be denied access to PUBGM.

44. Defendants market the Cheating Software in the United States with knowledge that they circumvent PUBMG's technological detection measures. Indeed, Defendants' marketing specifically touts and advertises that the Cheating Software cannot be detected by Plaintiffs.

45. As a result of the foregoing, Defendants are offering to the public, providing, importing, or otherwise trafficking in technology that violates 17 U.S.C. § 1201(a)(2).

46. Defendants' acts constituting DMCA violations have been and continue to be performed without the permission, authorization, or consent of Plaintiffs.

47. Defendants have violated Section 1201 of the DMCA willfully and for private commercial gain.

48. Defendants' conduct has caused damage to Plaintiffs and has unjustly enriched Defendants, in an amount to be proven at trial.

49. As a result of Defendants' acts and conduct, Plaintiffs have sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Plaintiffs are informed and believe, and on that basis allege, that, unless enjoined and restrained by this Court, Defendants

will continue to violate Section 1201 of the DMCA.  Plaintiffs are entitled to injunctive relief to restrain and enjoin Defendants' continuing unlawful conduct.

50.     As a direct and proximate result of Defendants' conduct, pursuant to 17 U.S.C. § 1203(c), Plaintiffs are entitled to Defendant's profits attributable to their violations of 17 U.S.C § 1201.

51.     Alternatively, Plaintiffs are entitled to the maximum statutory damages, pursuant to 17 U.S.C. § 1203(c)(A), in the amount of $2,500 with respect to each violation by Defendants.

52.     Plaintiffs further are entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. § 1203(b).

## COUNT II
### Intentional Interference With Contractual Relations

53.     Plaintiffs re-allege and incorporate by reference the allegations in paragraphs 1 through 52, as if set forth fully herein.

54.     As described herein, in order to install and play PUBGM, licensed users in the United States first must assent to the TOU, which is a binding, valid, and enforceable contract between Tencent and players of PUBGM.

55.     Tencent's contracts with its users are valid and enforceable.

56.     Each time a purchaser of the Cheating Software uses the Cheating Software in connection with PUBGM, he or she breaches the TOU.  Plaintiffs are informed and believe, and on that basis allege, that thousands of such breaches have taken place by Defendants' customers.

57.     Plaintiffs are informed and believe, and on that basis allege, that Defendants are aware of both the existence and specific relevant terms of contracts between Tencent and its users in the United States, including the TOU, and additionally are aware of the existence and content of the Code of Conduct, by virtue of their own accounts.  Specifically, Defendants are aware that the TOU and

Mitchell
Silberberg &
Knupp LLP
12945486.4

17

Code of Conduct prohibit players from using the Cheating Software. Nevertheless, Defendants intentionally encourage and induce users of PUBGM to purchase and use the Cheating Software, knowing that the use of these products by their customers is a breach of these customers' contracts with Tencent.

58.     By inducing Plaintiffs' users to breach their contracts with Tencent, Defendants have intentionally interfered, and continue to interfere, with the contracts between Tencent and its users.

59.     As a direct and proximate result of Defendants' actions, Plaintiffs have suffered damage in an amount to be proven at trial, including but not limited to a loss of goodwill among users of the Plaintiffs' games, diversion of Plaintiffs' resources to attempt to detect and prevent the use of the Cheating Software, decreased profits, and a loss of profits from users whose accounts Plaintiffs have terminated for violation of the TOU and Code of Conduct in the United States.

60.     As a further result of Defendants' actions, Defendants have unjustly obtained specifically identifiable property, consisting of all of the proceeds attributable to the sale of the Cheating Software in the United States, and any other products or services that violate any of Plaintiffs' rights, and any additional property traceable to those proceeds. Those proceeds, which are directly attributable to Defendants' manipulation and misuse of PUBGM and intentional interference with Tencent's contracts, rightfully and equitably belong to Plaintiffs.

61.     Defendants' intentional interference with the contracts between Tencent and its licensed users in the United States entitles Plaintiffs to injunctive relief and compensatory damages, the imposition of a constructive trust over Defendants' wrongfully obtained proceeds, and other available relief.

62.     Defendants are guilty of oppression, fraud, or malice, and Plaintiffs, in addition to actual damages, by reason thereof, are entitled to recover exemplary and punitive damages against Defendants.

## COUNT III

### Unfair Competition

63.     Plaintiffs re-allege and incorporate by reference the allegations in paragraphs 1 through 62, as if set forth fully herein.

64.     The acts and conduct of Defendants constitute unfair competition in the United States under California Business & Professions Code § 17200 *et seq.* and under California common law.

65.     As a direct and proximate result of Defendants' unfair competition in the United States, Plaintiffs have been damaged, and Defendants have been unjustly enriched, in an amount to be proven at trial for which damages and/or restitution and disgorgement is appropriate.  Such damages and/or restitution and disgorgement should include a declaration by this Court that Defendants are constructive trustees for the benefit of Plaintiffs, and an order that Defendants convey to Plaintiffs the gross receipts received or to be received that are attributable to the sale of the Cheating Software in the United States.

66.     Defendants are guilty of oppression, fraud or malice, and Plaintiffs, in addition to actual damages, by reason thereof, are entitled to recover exemplary and punitive damages against Defendants.

67.     As a result of Defendants' acts and conduct in the United States, Plaintiffs have sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law.  Plaintiffs are informed and believe, and on that basis allege, that unless enjoined and restrained by this Court, Defendants will continue to engage in unfair competition.  Pursuant to California Business & Professions Code § 17203, Plaintiffs are entitled to temporary, preliminary and permanent injunctions prohibiting further acts of unfair competition.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that this Court enter judgment in their favor on each and every claim for relief set forth above and award it relief, including but not limited to an order:

1.     Preliminarily and permanently enjoining Defendants, their officers, employees, agents, subsidiaries, representatives, distributors, dealers, members, affiliates, and all persons acting in concert or participation with Defendants from: (i) trafficking in circumvention devices in the United States; (ii) intentionally interfering with Tencent's contracts with players in the United States; and (iii) engaging in unfair competition in the United States.

2.     Requiring Defendants to shut down the Cheating Software and any colorable copies thereof, hosted at any domain, address, location, or ISP.

3.     Requiring Defendants to deliver to Plaintiffs all copies of materials that infringe or violate any of Plaintiffs' rights, as described herein.

4.     Requiring Defendants to provide Plaintiffs with an accounting of any and all sales of products or services in the United States that infringe or violate any of Plaintiffs' rights, as described herein.

5.     Awarding Plaintiffs actual or maximum statutory damages for violation of Section 1201 of the DMCA, as appropriate, pursuant to 17 U.S.C. § 1203(c).

6.     Awarding Plaintiffs their full costs and attorneys' fees in this action pursuant to 17 U.S.C. § 1203(b) and other applicable laws, as well as pre- and post-judgment interest as appropriate.

7.     Awarding Plaintiffs exemplary and punitive damages against Defendants on Plaintiffs' cause of action for intentional interference with contractual relations.

8.     Awarding Plaintiffs restitution of Defendants' unlawful proceeds, including an accounting of any and all sales of the Cheating Software in the United

Mitchell
Silberberg &
Knupp LLP
12945486.4

20

States, and/or any other products or services that violate any of Plaintiffs' rights described herein.

9.    Imposing a constructive trust over the proceeds unjustly obtained by Defendants through the sales of the Cheating Software in the United States, and/or any other products or services that violate any of Plaintiffs' rights described herein.

10.    Awarding such other and further relief as this Court may deem just and appropriate.

DATED: March 5, 2021                MITCHELL SILBERBERG & KNUPP LLP


By:  /s/ Marc E. Mayer
      Marc E. Mayer
      Karin G. Pagnanelli
      Attorneys for Plaintiffs

1   MARC E. MAYER (Zulassungsnr. 190969)
2     mem@msk.com
3   KARIN G. PAGNANELLI (Zulassungsnr. 174763)
4     kgp@msk.com
5   MITCHELL SILBERBERG & KNUPP LLP
6   2049 Century Park East, 18th Floor
7   Los Angeles, CA 90067-3120
8   Telefon: (310) 312-2000
9   Fax: (310) 312-3100

10   Anwälte der Klägerinnen

11                     UNITED STATES DISTRICT COURT

12                   CENTRAL DISTRICT OF CALIFORNIA

13                 WESTERN DIVISION – SPRING STREET

14      [in etwa: US-Bezirksgerichts für den Bezirk Central von Kalifornien, Abteilung West – Spring Street]

| | |
|---|---|
| PROXIMA BETA PTE. LIMITED, mit dem angenommenen Geschäftsnamen „Tencent Games", eine nach dem Recht von Singapur gegründete Gesellschaft, und KRAFTON, INC., eine nach koreanischem Recht gegründete Gesellschaft<br><br>                 Klägerinnen<br><br>     gegen<br><br>ANDREW MARTIN alias Asyhole; ANDRE SWIRSZCZUK alias Girabaldi; SAMAD AHMED alias Samad Hossain alias Haxsamad, alias Sharpshooter Bangladesh und die nicht namentlich benannten Personen zu 1) bis einschließlich zu 6)<br><br>     Beklagte. | AKTENZEICHEN 2:21-cv-2056<br>**KLAGE WEGEN:**<br>**(1) ILLEGALEN HANDELS MIT UMGEHUNGSMITTELN;**<br>**(2) VORSÄTZLICHER STÖRUNG VON VERTRAGSBEZIEHUNGEN**<br>**(3) UNLAUTEREN WETTBEWERBS**<br>**Antrag auf ein Schwurgerichtsverfahren** |

27         Proxima Beta PTE. Limited, mit dem angenommenen Geschäftsnamen „Tencent Games"

28   („Tencent"), und KRAFTON, INC. („Krafton") (zusammen die „Klägerinnen") machen Folgendes

29   geltend:

30

31                           **VORBEMERKUNG**

32         1.     Zusammen besitzen, betreiben und/oder veröffentlichen die Klägerinnen das Online-

33   Multiplayer-Spiel mit dem Namen „Player Unknown's Battlegrounds Mobile" („PUBGM").

34   Mit dieser Klage wollen die Klägerinnen dem rechtswidrigen, auf Gewinn abzielenden Verkauf und

35   Vertrieb von bösartigen Softwareprodukten durch die Beklagten, die darauf abzielen, die

36   Multiplayer-Nutzung von PUBGM zu schädigen,

Mitchell
Silberberg &
Knupp LLP

12945486.4

1

1   indem sie Personen, die zur allgemeinen Öffentlichkeit zählen, befähigen, sich in PUBGM unlautere

2   Wettbewerbsvorteile zu verschaffen (d. h. zu betrügen), Einhalt zu gebieten.

3        2.     Die Beklagten sind eine Gruppe natürlicher Personen, die gemeinschaftlich unter

4   verschiedenen Geschäftsnamen oder Handelsnamen, wie unter anderem „GMSPack", „Sharpshooter",

5   „AutoSkillz" und „CheatNinja" agieren. CheatNinja, dem Vernehmen nach ein gemeinsames

6   Unterfangen der Eigentümer von GMSPack Sharpshooter und AutoSkillz, beschreibt sich selbst als „der

7   führende Cheat-Entwickler und -Herausgeber für mobile Spiele seit 2018". Die Beklagten, die

8   hauptsächlich unter dem Geschäftsnamen CheatNinja und über die CheatNinja-Website

9   (www.cheatninja.com) geschäftlich tätig sind, erstellen, vermarkten, verkaufen, vertreiben und nutzen

10   anderweitig für den eigenen Gewinn im Rahmen ihrer Geschäftstätigkeit ein Portfolio an bösartigen

11   Cheats und Hacks für PUBGM, einschließlich des „SharpShooter PUBG Mobile Android Cheat" und des

12   „SharpShooter PUBG Mobile iOS Cheat" (zusammen die „Cheat-Software"). Die Cheat-Software

13   befähigt Spieler, PUBGM zu ihrem persönlichen Vorteil zu manipulieren. Das geschieht etwa durch die

14   Festlegung der Zielrichtung von Waffen, das Offenbaren der Standorte von Gegnern und indem der

15   Spieler damit viele verschiedene Informationen einsehen kann, die normalerweise verborgen sind.

16        3.     Die Beklagten haben den Klägerinnen und deren Geschäftsinteressen massiven und

17   irreparablen Schaden zugefügt bzw. fügen solchen Schaden weiterhin zu. Der wirtschaftliche Erfolg des

18   Geschäfts der Klägerinnen hängt davon ab, dass ihre Spiele für alle Spieler unterhaltsam und fair sind,

19   und die Klägerinnen wenden sehr viel Zeit und Geld auf, um sicherzustellen, dass dies der Fall ist. Der

20   Verkauf und Vertrieb der Cheat-Software insbesondere in den Vereinigten Staaten durch die Beklagten

21   hat den Klägerinnen Verluste in Höhe mehrerer Millionen Dollar beschert und ihrem Firmenwert und

22   ihrer Reputation irreparablen Schaden zugefügt.

23        4.     Durch das Erstellen, Verkaufen, Unterhalten und den Vertrieb der Cheat-Software

24   haben die Beklagten zahlreiche nach dem Recht der Vereinigten Staaten und Kaliforniens rechtswidrige

25   Handlungen vollführt. Die Beklagten haben gegen Section 1201 des Digital Millennium Copyright Act

26   („DMCA" – das US-amerikanische Urheberrechtsgesetz), 17 U.S.C. § 1201(b)(1) [United States Code

27   Bd. 17, § 1201(b)(1); offizielle Kodifizierung der US-Bundesgesetze] verstoßen, indem sie Technologien

28   verkaufen, importieren, anbieten, bereitstellen und anderweitig illegal mit diesen handeln,

29

Mitchell
Silberberg &
Knupp LLP

12945486.4

1   die zur Umgehung und Aushebelung der Technologien genutzt werden, die die Klägerinnen zur
2   Entdeckung der Cheat-Software und zum Schutz der Integrität und des wirtschaftlichen Werts von
3   PUBGM verwenden. Die Beklagten haben wissentlich, vorsätzlich und böswillig die Nutzerverträge
4   gestört und beeinträchtigt, die die Klägerinnen mit ihren Kunden in den Vereinigten Staaten geschlossen
5   haben, welche ausdrücklich genau diese Art von Betrug verbieten, den die Beklagten mittels ihrer Cheat-
6   Software ermöglichen. Die Beklagten wissen nicht nur, dass ihr Verhalten rechtswidrig ist, sondern
7   befleißigen sich solch eines Verhaltens mit der vorsätzlichen Absicht, den Klägerinnen und deren
8   Geschäft Schaden zuzufügen. Die Klägerinnen haben ein Anrecht auf finanziellen Schadensersatz,
9   Rechtsschutz durch eine Unterlassungsverfügung und andere billigkeitsrechtliche Rechtsbehelfe sowie
10  Strafschadensersatz gegen die Beklagten.

11

12   **SACHLICHE UND ÖRTLICHE ZUSTÄNDIGKEIT**

13   5.      Es handelt sich hier um eine Zivilklage, mit der um Schadensersatz, Rechtsschutz durch
14   Unterlassungsverfügung und andere billigkeitsrechtliche Rechtsbehelfe gemäß den Bestimmungen zum
15   Schutz vor Umgehung des DMCA, 17 U.S.C. § 1201 und den Gesetzen des US-Bundesstaats Kalifornien
16   ersucht wird.

17   6.      Dieses Gericht ist für die Forderungen der Klägerinnen im Zusammenhang mit
18   Urheberrechtsverletzungen und Verstoß gegen den DMCA gemäß 28 U.S.C. §§ 1331 und 1338(a)
19   sachlich zuständig. Gemäß 28 U.S.C. § 1367 hat dieses Gericht ergänzende Zuständigkeit in Hinblick auf
20   die Forderungen der Klägerinnen gemäß einzelstaatlichem Recht wegen vorsätzlicher Störung von
21   Verträgen und unlauterem Wettbewerb, soweit sie mit den Forderungen der Klägerinnen gemäß DMCA
22   als Teil des gleichen Verfahrens oder der gleichen Streitsache verbunden sind.

23   7.      Dieses Gericht hat die persönliche Zuständigkeit über die Beklagten, da jene ihre
24   Handlungen gezielt auf die Vereinigten Staaten und auf Kalifornien im Besonderen ausgerichtet haben,
25   gezielt von der Durchführung ihrer Geschäftstätigkeit in Kalifornien Gebrauch gemacht haben und eine
26   ständige Präsenz in Kalifornien etabliert haben. Die Klägerinnen machen nach bestem Wissen und
27   Gewissen geltend, dass unter anderem:

28   (a)     Die Beklagten umfangreiche und fortgesetzte Geschäfte mit Nutzern in den Vereinigten
29   Staaten und im US-Bundesstaat Kalifornien durchführen;

30
31
32
33
34

Mitchell
Silberberg &
Knupp LLP

12945486.4

(b)    Die Beklagten die Cheat-Software in den Vereinigten Staaten und im US-Bundesstaat Kalifornien vertreiben, die Cheat-Software in den Vereinigten Staaten und im US-Bundesstaat Kalifornien bewerben und vermarkten sowie direkt mit Nutzern in den Vereinigten Staaten und im US-Bundesstaat Kalifornien einschließlich für die Zwecke der Unterbreitung von Verkaufsangeboten für die Cheat-Software gegenüber solchen Nutzern und zur Erbringung von technischem Support für die Cheat-Software kommunizieren;

(c)    Die Beklagten mit natürlichen Personen in den Vereinigten Staaten und im US-Bundesstaat Kalifornien Verträge abgeschlossen haben und weiterhin solche Verträge abschließen, gemäß denen diese natürlichen Personen unter anderem von den Beklagten in Lizenz das Recht zur Installation und Nutzung der Cheat-Software erwerben. Als Gegenleistung für solche Lizenzen erhalten die Beklagten fortgesetzte, sich wiederholende tägliche, wöchentliche oder monatliche Zahlungen von natürlichen Personen in den Vereinigten Staaten und im US-Bundesstaat Kalifornien; und

(d)    Die Beklagten mit juristischen Personen, die in den Vereinigten Staaten und im US-Bundesstaat Kalifornien ansässig sind, im Zusammenhang mit ihrer Geschäftstätigkeit Verträge schließen. Dazu gehören beispielsweise Domain-Registrierung, Hosting- und Content-Delivery-Dienstleister sowie Kreditkartenaussteller und Handelsbanken.

8.    Die örtliche Zuständigkeit ist gemäß 28 U.S.C. § 1391(b) in diesem Bezirk gegeben, weil es sich um einen Gerichtbezirk handelt, in dem ein wesentlicher Teil der Geschehnisse erfolgte, die Anlass für die Forderungen sind und/oder in dem die Klägerinnen geschädigt wurden.

### DIE PARTEIEN

9.    Die Klägerin Proxima Beta mit dem angenommenen Geschäftsnamen „Tencent Games" ist eine in Singapur ansässige Gesellschaft und eine Konzerngesellschaft der Tencent-Gruppe. Tencent veröffentlicht und betreibt das populäre Online-Handyspiel PUBG Mobile (oder „PUBGM") in den Vereinigten Staaten.

10.    Die Klägerin Krafton, Inc. ist eine in Südkorea ansässige Gesellschaft für die Entwicklung und Veröffentlichung von Videospielen, deren Geschäftstätigkeit aus der Entwicklung, dem Vertrieb und der Unterhaltung eines Portfolios an Computer- und Konsolenspielen besteht. Krafton ist

die Rechtsnachfolgerin der PUBG Corporation und die Inhaberin der US-Urheberrechte an PUBGM.

11.    Die Klägerinnen machen nach bestem Wissen und Gewissen geltend, dass der Beklagte Andrew Martin (alias Asyhole) eine natürliche Person mit Wohnsitz in Canyon Country, Kalifornien, ist. Die Klägerinnen machen nach bestem Wissen und Gewissen geltend, dass Martin ein hochrangiger Angestellter zweier bedeutender Anbieter von Cheat-Software, „GMSPack" und „Autoskillz", einschließlich durch die Vorgängerwebsite von CheatNinja auf www.gmspack.com, gewesen ist und zu den leitenden Moderatoren oder Administratoren der Website CheatNinja.com gehört oder gehört hat. In dieser Rolle vermarktet, bewirbt, promotet und fördert Martin anderweitig den Verkauf der Cheat-Software.

12.    Die Klägerinnen machen nach bestem Wissen und Gewissen geltend, dass der Beklagte Andre Swirszczuk (alias Geribaldi) eine natürliche Person mit Wohnsitz in Rudolstadt, Bundesrepublik Deutschland, ist. Die Klägerinnen machen nach bestem Wissen und Gewissen geltend, dass Swirszczuk einer der Gründer zweier bedeutender Anbieter von Cheat-Software, „Autoskillz" und „Sharpshooter Corporation", ist und zu den leitenden Entwicklern und/oder Vermarktern der Cheat-Software gehört. Die Klägerinnen machen nach bestem Wissen und Gewissen geltend, dass Swirszczuk zudem einer der Administratoren der Website www.sharpshooterdevelopers.com ist oder gewesen ist, welche die durch www.gmspack.com angebotene Cheat-Software promotete und Links zur Website CheatNinja.com bereitstellte. Swirszczuk hat behauptet, dass es zu den Zielen des Sharpshooter Project gehört, „einen neuen Markt für PC-ähnliche mobile Multiplayer-Hacks zu entwickeln" und „die weltgrößte CHEATER-COMMUNITY in der Geschichte der Handy-Spiele zu erschaffen". Die Klägerinnen machen nach bestem Wissen und Gewissen geltend, dass Swirszczuk zu den natürlichen Personen gehört und/oder gehört hat, die hauptsächlich für das Erstellen, Produzieren, Unterhalten, Vermarkten, Bewerben, Unterstützen und Monetarisieren der Cheat-Software verantwortlich sind.

13. Die Klägerinnen machen nach bestem Wissen und Gewissen geltend, dass der Beklagte Samad Ahmed, alias Samad Hossain alias Haxsamad, alias Sharpshooter Bangladesh, eine natürliche Person mit Wohnsitz in Cumilla, Bangladesch, ist. Die Klägerinnen machen nach bestem Wissen und Gewissen geltend, dass Hossain die Cheat-Software über die Website www.cheatninja.io vertreibt und weiterverkauft.

14. Die Klägerinnen machen nach bestem Wissen und Gewissen geltend, dass der noch nicht namentlich bekannte Beklagte zu 1) alias Glacier, der noch nicht namentlich bekannte Beklagte zu 2) alias llllllllll, der noch nicht namentlich bekannte Beklagte zu 3) alias MRMTT und der noch nicht namentlich bekannte Beklagte zu 4) alias Sanguis Administratoren der Website und des Message-Boards von CheatNinja und/oder ihrer Vorgängerversionen auf www.gmspack.com sind und/oder gewesen sind. In dieser Rolle kommunizieren diese natürlichen Personen mit Kunden der Klägerinnen, um deren Verwendung der Cheat-Software zu unterstützen und zu ermöglichen und um als Verbindungspersonen zu den Entwicklern der Cheat-Software zu dienen und/oder selber als Entwickler der Cheat-Software zu agieren. Neben anderen Handlungen unterstützen Glacier und llllllllll Kunden beim Betreiben der Cheat-Software, beraten Kunden in der Frage, wie jene bei der Verwendung der Cheat-Software eine Überführung oder Entdeckung durch die Klägerinnen vermeiden können, und benachrichtigen Nutzer über Aktualisierungen und Verbesserungen der Cheat-Software. Glacier und llllllllll sind zudem an der Rekrutierung sowie Beauftragung von individuellen Weiterverkäufern der Cheat-Software und der Kommunikation mit diesen Weiterverkäufern beteiligt. Die wahren Namen und Funktionen – ob natürliche Personen, juristische Personen oder anderweitig verbunden – von Glacier und llllllllll sind den Klägerinnen unbekannt, die daher besagte Beklagte unter diesen Pseudonymen und fiktiven Namen verklagen.

15. Die Klägerinnen machen nach bestem Wissen und Gewissen geltend, dass der noch nicht namentlich bekannte Beklagte zu 5) alias Rolan und der der noch nicht namentlich bekannte Beklagte zu 6) alias SSshooter zusammen mit Martin die „globalen Moderatoren" von Cheat Ninja und/oder dessen Vorgängerwebsite auf www.gmspack.com sind. In dieser Rolle vermarkten bewerben, promoten und fördern diese natürlichen Personen anderweitig den Verkauf der Cheat-Software, das schließt auch die Rekrutierung, Beauftragung von individuellen „Weiterverkäufern" der Cheat-Software und die Kommunikation mit diesen „Weiterverkäufern" ein. Die wahren Namen und Funktionen – ob

1   natürliche Personen, juristische Personen oder anderweitig verbunden – von Rolan und SSshooter sind
2   den Klägerinnen unbekannt, die daher besagte Beklagte unter diesen Pseudonymen und fiktiven Namen
3   verklagen.

4          16.    Die wahren Namen und Funktionen – ob natürliche Personen, juristische Personen oder
5   anderweitig verbunden – der noch nicht namentlich bekannten Beklagten sind den Klägerinnen
6   unbekannt, die daher besagte Beklagte unter diesen Pseudonymen und fiktiven Namen verklagen. Zu
7   diesen Beklagten gehören natürliche Personen, deren wahre Identitäten den Klägerinnen bislang noch
8   nicht bekannt sind, die jedoch gemeinschaftlich – und zwar häufig unter der Tarnung von Internet-
9   Pseudonymen – in der Begehung der in dem vorliegenden Dokument geltend gemachten Handlungen
10  zusammen agieren. Die Klägerinnen werden um Erlaubnis zur Änderung dieser Klageschrift nachsuchen,
11  um deren wahre Namen und Funktionen zu benennen, sobald die Identitäten und Funktionen der
12  besagten Beklagten ermittelt werden konnten. Die Klägerinnen machen nach bestem Wissen und
13  Gewissen geltend, dass alle mit dem vorliegenden Dokument Beklagten den Klägerinnen gegenüber als
14  Folge ihrer Beteiligung an allen oder einigen der Handlungen, die in dieser Klageschrift dargelegt
15  werden, haften. (Alle der vorstehend benannten Beklagten, also sowohl die namentlich bekannten als
16  auch die noch nicht namentlich bekannten Beklagten, werden hier zusammen als „Beklagte" bezeichnet.)

17         17.    Die Klägerinnen machen nach bestem Wissen und Gewissen geltend, dass jeder der
18  Beklagten zu jedem in dieser Klage erwähnten Zeitpunkt ein Bevollmächtigter eines jeden der anderen
19  Beklagten war und in Bezug auf alle in dieser Klage vorgetragenen Handlungen im Rahmen und Umfang
20  einer solchen Bevollmächtigung handelte.

21

22                **TATSACHEN, DIE ALLEN FORDERUNGEN GEMEINSAM SIND**
23                        **PUBG Mobile**

24         18.    Tencent Games ist Betreiberin und Verlegerin des Videospiels mit dem Namen „Player
25  Unknown's Battlegrounds Mobile" („PUBGM") in den Vereinigten Staaten. PUBGM ist die mobile
26  Version des ungeheuer populären Spiels „Player Unknown's Battlegrounds" („PUBG"), das Eigentum
27  der PUBG Corporation ist und von dieser vertrieben wird.

28         19.    PUBGM ist eine mobile Spiel-App, die sowohl für Android- als auch für Apple-Geräte
29  (iOS), wie etwa Smartphones, Tablets und anderen tragbaren Geräten verfügbar ist. So wie das
30  ursprüngliche Spiel handelt es sich bei PUBGM um ein Schnelligkeit verlangendes Online-Action- und
31  Survival-Spiel.

32

1    In seinem klassischen „Battle-Royale"-Modus kämpfen bis zu 100 Spieler gegeneinander um Leben und

2    Tod bis zum letzten Überlebenden. In diesem Modus landen Spieler mit dem Fallschirm auf einem

3    großen computergenierten Schlachtfeld; müssen sich dann Waffen, Rüstung, Fahrzeuge und andere

4    Survival-Tools verschaffen (z. B. Verbände, Rucksäcke, Tarnung) und versuchen, andere Spieler

5    auszuschalten und selber am Leben zu bleiben, während sich die Größe des Schlachtfelds mehr und mehr

6    verkleinert. PUBGM bietet auch kleinere Duelle mit acht Kämpfern und einen „Zombies"-Modus, in

7    dem eine kleine Gruppe von Spielern angesichts dutzender computergesteuerter gegnerischer Zombies

8    versucht, am Leben zu bleiben.

9         20.    PUBGM-Kämpfe sind ihrem Wesen nach sehr intensiv und durch harten Wettkampf

10   geprägt. Jeder Teilnehmer steht mit den anderen in Konkurrenz um eine begrenzte Zahl an Waffen,

11   Munition Fahrzeugen, Sanitäterpacks und anderen Materialien, die der Spieler zum Überleben braucht.

12   PUBGM-Spieler können das Spiel rein zum Vergnügen oder in Kämpfen „mit Ranglisten" für einen

13   Platz in der globalen Bestenliste spielen. Zudem wird PUBGM auf tausenden „eSport"-Turnieren überall

14   auf der Welt gespielt, von denen viele für den oder die Gewinner ein Preisgeld vorsehen. Diese Turniere

15   ziehen hunderte oder tausende Zuschauer und begeisterte Fans an. Spieler mit einer hohen Platzierung

16   erhalten häufig bezahlte Positionen innerhalb von Teamorganisationen, lukrative Werbeverträge und

17   Einnahmen aus bezahlten Abonnements für äußerst populäre Live-Streams von Spiele-Sessions.

18        21.    Der Erfolg von PUBGM beruht teilweise auf der Fähigkeit der Klägerinnen, ein

19   durchweg überzeugendes Spielerlebnis anzubieten, sodass ihre Kunden nicht das Interesse an dem Spiel

20   verlieren und Spaß daran haben, es für längere Zeit zu spielen. Insbesondere angesichts des bedeutenden

21   Wettkampfbetriebs und der auf Live-Streams beruhenden wirtschaftlichen Aktivitäten, die mit und um

22   PUBGM herum gewachsen sind, besteht ein unabdingbarer Teil dieses Spielerlebnisses aus der Fairness

23   und Integrität des Spiels. Dementsprechend investieren die Klägerinnen sehr viel Zeit und Geld, um

24   sicherzustellen, dass alle Spieler sich einander auf gleichberechtigter Grundlage begegnen und eine echte

25   Chance haben, ihre Gegner zu besiegen und im Spiel voranzukommen. Die Aufrechterhaltung eines

26   angemessenen Gleichgewichts im Spiel ist für den Erfolg des Spiels absolut unabdingbar. Wenn dieses

27   Gleichgewicht gewollt gestört wird oder wenn der Eindruck entsteht, dass Spieler betrügen oder einen

28

Mitchell
Silberberg &
Knupp LLP

12945486.4

unfairen Vorteil besitzen, werden die Spieler nicht länger Spaß am den Spiel haben und werden aufhören, es zu spielen. Das wiederum könnte die gesamte PUBGM-Community stören und/oder zerstören.

**Die Anstrengungen der Klägerinnen zum Schutz gegen Hacker und Betrüger**

22.    Da PUBGM ein so populäres Spiel ist, versuchen skrupellose Personen und Unternehmen, wie etwa die Beklagten, ständig, dass Spiel für ihren eigenen persönlichen Vorteil und Gewinn auszunutzen. Dabei ist ihnen bewusst, dass sie das Spielerlebnis anderer Spieler ruinieren und die Klägerinnen sowie deren Geschäftsinteressen schädigen. Aus diesem Grunde unternehmen die Klägerinnen gewaltige Anstrengungen zum Schutz der Integrität des Spiels durch technische und vertragliche Mittel.

23.    Erstens verfügt das Spiel, um Nutzer am Betrügen oder sonstiger unbilliger Ausnutzung von PUBGM zu hindern, über eine Reihe an technologischen Vorkehrungen, die konzipiert wurden, um zu erkennen, ob Spieler Software verwenden, mit deren Hilfe sie im Spiel betrügen könnten. Wird dergleichen entdeckt, werden den Spielern der Zugang zu und das Spielen von PUBGM verwehrt. Daher muss jede Hack- oder Cheat-Software, soll sie denn wirksam sein, so gestaltet werden, dass sich ihre Entdeckung verhindern oder vermeiden lässt. Die Beklagten spielen seit Jahren ein „Katz-und-Maus-Spiel", in dessen Rahmen jedes Mal, wenn eine neue oder verbesserte Technologie, die erkennt, ob ein Spieler Cheat-Software nutzt, entwickelt oder eingesetzt wird, die Beklagten die Cheat-Software aktualisieren oder modifizieren, um solchen technologischen Vorkehrungen zu entgehen und/oder diese zu umgehen.

24.    Zweitens müssen Nutzer, um PUBGM aufzurufen, herunterzuladen oder zu spielen, ein PUBGM-Konto erstellen und registrieren, und im Rahmen dieses Vorgangs müssen sie ausdrücklich der Endnutzerlizenzvereinbarung und den Nutzungsbedingungen (zusammen die „Nutzungsbedingungen") zustimmen. Der vollständige Text der Nutzungsbedingungen wird den Nutzern zum Zeitpunkt ihrer Registrierung für ein PUBG-Konto sowie anlässlich jeder Aktualisierung der Nutzungsbedingungen angezeigt. Die Nutzungsbedingungen sind in ihrer vollständigen Fassung unter pubgmobile.com/terms.html verfügbar.

25.    Die Nutzungsbedingungen umfassen die Vereinbarung über eine bedingte, beschränkte Lizenz zwischen Tencent und deren Nutzern. Gemäß den Nutzungsbedingungen lizenziert Tencent die Rechte für das Herunterladen,

Mitchell Silberberg & Knupp LLP

12945486.4

9

1     Kopieren, Installieren und Spielen von PUBGM vorbehaltlich bestimmter Vorschriften, Beschränkungen

2     und Konditionen. Neben anderen Bestimmungen verbieten die Nutzungsbedingungen den Spielern

3     ausdrücklich „die Nutzung von Cheats, Exploits, Automatisierungssoftware und jeder nicht genehmigten

4     Fremdsoftware, die darauf abzielt, [PUBGM] zu modifizieren oder zu stören" oder „die Deaktivierung

5     oder Umgehung" etwaiger technischer Vorkehrungen, die eine unbefugte Nutzung von PUBGM

6     verhindern sollen.

7           26.      PUBGM ist für die Öffentlichkeit ausschließlich über die proprietären Server- und

8     Matchmaking-Systeme der Klägerinnen verfügbar. Daher ist es für einen Nutzer unmöglich, auf

9     rechtskonformen Weg Zugang zu PUBGM zu erlangen oder PUBGM zu spielen, wenn er den

10     Nutzungsbedingungen nicht ausdrücklich zugestimmt hat.

11

12                   **Die Beklagten und ihr rechtswidriges Verhalten**

13           27.      Die Klägerinnen machen nach bestem Wissen und Gewissen geltend, dass die

14     Beklagten an der Entwicklung, Aktualisierung, Vermarktung, dem Vertrieb, Verkauf und Support der

15     PUBGM-Cheat-Software, einschließlich des „SharpShooter PUBG Mobile Android Cheat" und des

16     „SharpShooter PUBG Mobile iOS Cheat", mitgewirkt haben. Die Beklagten haben die PUBGM-Cheat-

17     Software über die CheatNinja-Website und durch autorisierte „Weiterverkäufer" vermarktet, verkauft

18     und dafür Kunden-Support angeboten, wobei Letztere wiederum die Cheat-Software in Beiträgen auf

19     Message-Boards auf der CheatNinja-Website und auf anderen Websites, die dem Hacken und Betrügen

20     dienen, bewerben.

21           28.      Die CheatNinja behauptete, dass CheatNinja der „führende Entwickler und Verleger

22     von mobilen Cheats seit 2018" ist. CheatNinja ist eine Umfirmierung [Rebranding] dreier zuvor

23     existierender Entwickler und Verkäufer von Cheat- und Hacking-Software, die sich mutmaßlich

24     „zusammengeschlossen haben": „Autoskillz", „SharpShooter", und „GMSPack". Entsprechend der

25     CheatNinja-Website ist Autoskillz „einer der weltweit ersten Entwickler von Game-Cheats, der sich auf

26     den mobilen Bereich spezialisiert hat", ist „Sharpshooter" ein „führender Entwickler für mobile Cheats",

27     dessen Software „das Fundament für die mobile Cheat-Branche bereitet hat", und „GMSPack" ist „ein

28

Mitchell
Silberberg &
Knupp LLP

12945486.4

professionelles Cheat-Vertriebsteam, das sich mit der Bereitstellung von technischem Support, der Vermarktung und Promotionsleistungen für einzelne Entwickler und Teams im Rahmen der Nutzungsdauer von „Cheats" befasst. Die Klägerinnen machen nach bestem Wissen und Gewissen geltend, dass zusätzlich zum Verkauf bereits existierender Softwareprodukte CheatNinja Verlagsleistungen (d. h. Vermarktung, Vertrieb, Kundensupport und andere damit verbundene Leistungen) für externe Entwickler anbietet, die Cheat-Software entwickelt haben und die Vermarktung und den Verkauf der Software an die Öffentlichkeit wünschen.

29.     Unter den für den Verkauf durch CheatNinja (zuvor durch GMSPack und andere Vorgängerwebsites) angebotenen Produkten gehört die PUBGM-Cheat-Software. Die Cheat-Software, die zuerst über www.gmspack.com und dann über die CheatNinja-Website angeboten worden ist, gibt vor, dass PUBGM-Spieler mit ihr zum Betrügen im Spiel befähigt werden. Das geschieht – unter anderem – durch die Festlegung der Zielrichtung von Waffen eines Spielers, die Erweiterung des Sichtfelds eines Spielers, das Beleuchten von Gegnern und durch die Anzeige von Informationen, wie etwa Standort und Gesundheitszustand von verborgenen oder verdeckten Gegnern oder von Orten mit „wertvollen Gegenständen". Zum Bespiel bewirbt CheatNinja den SharpShooter PUBG Mobile Android Cheat auf folgende Weise:

> Der erste und ausgereifteste externe Cheat für PUBG Mobile. Gewinne Spiele ohne Mühe.
>
> Behalte stets den Überblick über Status und den genauen Standort aller Feinde zu allen Zeiten mit Spieler-ESP [Extra Sensory Perception – extra sensorische Wahrnehmung] (Boxen, Skelette, PS, Entfernung, Waffen usw.) und mit präzisem Aimbot kannst du sie aus hunderten Metern Entfernung erfassen und töten. Dank hochgradig benutzerdefinierbarer Beute-ESP wird dir nie wieder ein wertvoller Gegenstand entgehen.
>
> Setze dich an die Spitze der Rangliste, entsperre Spieleinhalte schneller, gewinne mehr Belohnungen und führe deine Teamgefährten von einem Sieg zum nächsten!

30. Unten wird ein Screenshot eines Spielers, der die Cheat-Software in PUBGM verwendet, angezeigt. Einige der beworbenen Funktionen der Cheat-Software sind auf diesem Screenshot ersichtlich, dazu gehört die Nutzung von ESP (Extra Sensory Perception), mit deren Hilfe Spieler, Objekte, Figuren, die keine Spieler sind, und Gegner (einschließlich der Spielernamen und von Gesundheitsdaten) durch Wände und sonstiges Gelände hindurch sehen können.



31. Die Klägerinnen machen nach bestem Wissen und Gewissen geltend, dass die Beklagten die Cheat-Software nicht direkt von ihren Websites, einschließlich der GMS-Pack- und CheatNinja-Websites, verkaufen. Stattdessen rekrutieren die Beklagten ein Netzwerk autorisierter „Weiterverkäufer", die wiederum Lizenzen für die Nutzung der Cheat-Software verkaufen. Dazu wird auf der CheatNinja-Website erklärt: „Wir verfügen über eine große Nutzerschaft und ein weltweites Vertriebsnetzwerk, das professionelle Marketing- und Promotionsleistungen erbringt." Um ein Weiterverkäufer der Cheat-Software zu werden, muss ein potenzieller Weiterverkäufer nur einen kurzen Online-Antrag ausfüllen und dann durch einen der Administratoren und Moderatoren von CheatNinja, wie es die Beklagten sind, zugelassen werden. Der „offizielle" Vorschlagspreis für eine Lizenz zum Herunterladen und die Nutzung der Cheat-Software beläuft sich auf 38,00 US-Dollar für ein monatliches Abonnement und auf 15,00 US-Dollar für ein wöchentliches Abonnement.

32. Die Klägerinnen machen nach bestem Wissen und Gewissen geltend, dass die Cheat-Software von PUBGM-Spielern in tausenden Fällen heruntergeladen und genutzt worden ist und dass

dies Spieler mit Wohnsitz in den Vereinigten Staaten einschließt. Zudem machen die Klägerinnen nach bestem Wissen und Gewissen geltend, dass die Beklagten hunderttausende Dollars mittels ihres Vertriebs der Cheat-Software und des Verkaufs von Lizenzen für die Cheat-Software eingenommen haben.

33.     Die Klägerinnen machen nach bestem Wissen und Gewissen geltend, dass zusätzlich zu Vermarktung und Vertrieb der Cheat-Software die Beklagten und andere CheatNinja-Vertreter umfangreichen und fortgesetzten Kundensupport sowie technische Unterstützung anbieten. Zum Beispiel unterhält CheatNinja ein Online-Message-Board-Forum (das vormals zu GMSPack gehörte), in dem Vertreter, einschließlich der Beklagten, den Kunden der Cheat-Software Informationen und Support in Hinblick auf eine Vielzahl an Themen bieten – wie etwa zum Status von Aktualisierungen oder „Patches" für die Cheat-Software, dazu, wie technische Probleme gelöst werden können, und dazu, wie Lizenzen für die Cheat-Software gekauft und verlängert werden können. Ein Großteil dieser Message-Boards befassen sich mit der Frage, ob die Software „sicher" ist (d. h. für die Anti-Cheat-Technologie von PUBGM nicht erkennbar ist) und was man tun muss, um im Falle der Nutzung von unzulässigen Cheats und Hacks die Entdeckung durch die Klägerinnen zu vermeiden. CheatNinja kommuniziert mit Nutzern zudem über den Instant-Messaging-Dienst Telegram und das Online-Chatroom-System mit der Bezeichnung „Discord".

34.     Die Klägerinnen machen nach bestem Wissen und Gewissen geltend, dass für ein Funktionieren der Cheat-Software in PUBGM diese notwendigerweise über Technologie verfügen muss, die vor allem entwickelt wurde, um die Erkennungsmaßnahmen der Klägerinnen zu vermeiden, diesen zu entgehen, auszuweichen oder zu umgehen. Die Beklagten bewerben und promoten außerdem insbesondere und in aggressiver Weise die Tatsache, dass die Cheat-Software für diesen rechtswidrigen Zweck entwickelt worden ist. Zum Beispiel verkünden die Beklagten auf der CheatNinja-Website, dass zu den „Eigenschaften" der Cheat-Software ihre „überragende Sicherheit" gehört. So heißt es mit den eigenen Worten der Beklagten: „[s]tatt mit den Spieleentwicklern Katz und Maus zu spielen, konzentrieren wir uns auf die Entwicklung von Cheating-Techniken, die sich von vornherein nur schwer entdecken lassen."

35.     Jedes Mal, wenn ein PUBGM-Spieler die Cheat-Software zum Betrügen in PUBGM verwendet, verstößt er damit gegen die Nutzungsbedingungen, einschließlich der Bestimmung, die den Spielern ausdrücklich „die Nutzung von Cheats, Exploits, Automatisierungssoftware und jeder nicht genehmigten Fremdsoftware, die darauf abzielt, [PUBGM] zu modifizieren oder zu stören", verbietet. Die Klägerinnen machen nach bestem Wissen und Gewissen geltend, dass in Folge des Verhaltens der Beklagten tausende oder zehntausende von Verletzungen dieser Verträge erfolgt sind.

36.     Die Klägerinnen machen nach bestem Wissen und Gewissen geltend, dass den Beklagten im vollen Umfang bewusst ist, dass die Verwendung der Cheat-Software gegen die Nutzungsbedingungen verstößt. Tatsächlich bot der Beklagte „Rolan" in einem „angehefteten" (höchste Priorität) Beitrag auf dem Message-Board von CheatNinja (mit der Überschrift „Betrügen wie ein Profi") den folgenden „Rat" an (Hervorhebung hinzugefügt):

> „***Wenn du betrügst, verstößt du vorsätzlich gegen die Servicebedingungen des Spiels.*** Damit gehen immer einige Risiken einher. Wir sind der sicherste Cheat-Anbieter, aber wir würden niemals behaupten, dass ‚dass die Gefahr, gesperrt zu werden, sich zu 100 % ausschließen lässt'. Jeder, der so etwas behauptet, handelt unverantwortlich."

Die Cheat-Software hat keinen anderen Zweck bzw. keine andere Funktion, als Spieler durch Verwendung von Cheats und Exploits zum Verstoß gegen die Nutzungsbedingungen zu befähigen. Somit besteht das Ziel der Beklagten darin, sicherzustellen, dass ihre Kunden weiterhin die Leistungen aus dem Vertrag mit den Klägerinnen erhalten, während jene zugleich schädigende Verstöße gegen ihre gemäß diesen Verträgen bestehenden Pflichten begehen.

37.     Durch ihr Verhalten haben die Beklagten PUBGM schweren Schaden zugefügt und fahren weiterhin fort, solchen schweren Schaden zuzufügen. Dieser Schaden ist unmittelbar, von großem Ausmaß und irreparabel und schließt (unter anderem) Folgendes ein:

(a)     Die Beklagten schädigen in irreparabler Weise die Fähigkeit der rechtmäßigen Kunden der Beklagten in den Vereinigten Staaten, das durch die Klägerinnen sorgfältig gestaltete Online-Erlebnis zu genießen und sich an diesem zu beteiligen. Das führt wiederum dazu, dass Nutzer zunehmend Unzufriedenheit gegenüber PUBGM empfinden, das Interesse daran verlieren und nicht länger spielen.

(b)     Das Verhalten der Beklagten hat die Klägerinnen dazu gezwungen, erhebliche Geldbeträge (und sehr viel Zeit) in dem Versuch aufzuwenden, den durch die Cheat-Software verursachten Schaden zu beheben. Dazu gehören die Entwicklung und Veröffentlichung neuer Versionen von PUBGM als Reaktion auf Beschwerden von Spielern, um der Cheat-Software entgegenzuwirken, die Beschäftigung von Mitarbeitern zur Entdeckung der Verwendung von Cheat-Software in den Spielen und das „Sperren" von (d. h. die dauerhafte Löschung der Konten von) Nutzern, die die Cheat-Software verwenden.

(c)     Das Verhalten der Beklagten schädigt die Reputation der Klägerinnen und führt zu einem erheblichen Verlust an Firmenwert durch gestörte Kundenbeziehungen sowohl innerhalb als auch außerhalb der Vereinigten Staaten.

38.     Das Verhalten der Beklagten hat zu Schäden für die Klägerinnen in einer bei der Verhandlung nachzuweisenden Höhe geführt. Nach Schätzung der Klägerinnen belaufen sich diese Schäden auf dutzende oder hunderte Millionen US-Dollar. Sofern nicht und bis nicht den Beklagten dies vorläufig oder dauerhaft untersagt wird, werden die Klägerinnen weiterhin schwere Schäden durch die Cheat-Software erleiden.

## KLAGEPUNKT I
### Illegaler Handel mit Umgehungsmitteln

39.     Die Klägerinnen nehmen das Vorbringen in den Ziffern 1 bis 38 durch Bezugnahme hier vollinhaltlich auf.

40.     PUBGM ist unter Einschluss unter anderem seines Quellcodes und seiner audiovisuellen Spielumgebungen ein urheberrechtlich geschütztes Werk.

41.     PUBGM nutzt eine Vielzahl an technologischen Vorkehrungen, die die Verwendung von Cheat-Software erkennen und Personen, die solche Software verwenden, den Zugang zum Spiel verweigern sollen. Solche technologischen Vorkehrungen kontrollieren effektiv den Zugang zum Spiel, einschließlich des Zugangs zu den dynamischen audiovisuellen Elementen, aus denen das Spiel besteht.

42.     Die Cheat-Software besteht aus bzw. enthält Technologien, Produkte, Leistungen, Vorrichtungen, Komponenten bzw. Teile davon, die in der Hauptsache für den Zweck der Umgehung der

Mitchell Silberberg & Knupp LLP

15

12945486.4

technologischen Vorkehrungen entwickelt oder angefertigt werden, die effektiv den Zugang zu PUBGM kontrollieren.

43.     Die Cheat-Software (und/oder deren Teile, mit denen die Anti-Cheat-Technologien von PUBG umgangen werden) haben keinen anderen wirtschaftlich bedeutungsvollen Zweck als die Umgehung einer technologischen Vorkehrung, die effektiv den Zugang zu einem urheberrechtlich geschütztem Werk kontrolliert und die die ausschließlichen Rechte eines Urheberrechteinhabers schützt. Ohne solche Umgehungsvorkehrungen kann die Cheat-Software nicht verwendet werden und funktioniert nicht. Das ist unter anderem der Fall, weil sie dann erkannt wird und dem Nutzer der Zugang zu PUBGM verwehrt wird.

44.     Die Beklagten vermarkten die Cheat-Software in den Vereinigten Staaten in dem Wissen, dass sie damit die technologischen Erkennungsmaßnahmen von PUBGM umgehen. Tatsächlich verweist das Marketing der Beklagten ausdrücklich darauf hin und bewirbt die Tatsache, dass die Cheat-Software von den Klägerinnen nicht erkannt werden kann.

45.     In Folge der vorstehenden Ausführungen bieten die Beklagten der Öffentlichkeit Technologie an, stellen jene bereit, importieren diese und treiben anderweitig damit illegalen Handel, was gegen 17 U.S.C. § 1201(a)(2) verstößt.

46.     Die Handlungen der Beklagten, welche Verstöße gegen den DMCA darstellen, wurden ohne die Erlaubnis, Genehmigung oder Einwilligung der Klägerinnen vollführt und werden so weiterhin vollführt.

47.     Die Beklagten haben vorsätzlich und für den persönlichen wirtschaftlichen Gewinn gegen Section 1201 DMCA verstoßen.

48.     Das Verhalten der Beklagten hat zu Schäden für die Klägerinnen und zu ungerechtfertigten Bereicherung der Beklagten in einer bei der Verhandlung nachzuweisenden Höhe geführt.

49.     Als Folge der Handlungen und Verhaltensweisen der Beklagten haben die Klägerinnen einen erheblichen, unmittelbaren und irreparablen Schaden erlitten und werden diesen weiter erleiden, für den es nach dem Gesetz keinen angemessenen Rechtsbehelf gibt. Die Klägerinnen machen nach bestem Wissen und Gewissen geltend, dass, sofern dieses Gericht dies nicht untersagt und unterbindet, die

Mitchell
Silberberg &
Knupp LLP

12945486.4

16

1  Beklagten weiterhin gegen Section 1201 DMCA verstoßen werden. Die Klägerinnen haben ein Anrecht
2  auf Rechtsschutz durch Unterlassungsverfügung, mit der den Beklagten die Fortführung des
3  rechtswidrigen Verhaltens untersagt und dieses unterbunden wird.

4       50.     Als eine direkte und unmittelbare Folge des Verhaltens der Beklagten haben die
5  Klägerinnen gemäß 17 U.S.C. § 1203(c) ein Anrecht auf die Gewinne der Beklagten, die sich ihren
6  Verstößen gegen 17 U.S.C § 1201 zuordnen lassen.

7       51.     Hilfsweise haben die Klägerinnen ein Anrecht auf den höchstmöglichen gesetzlichen
8  Schadenersatz gemäß 17 U.S.C. § 1203(c)(A) in Höhe von 2.500 US-Dollar in Bezug auf jeden Verstoß
9  durch die Beklagten.

10      52.     Die Klägerinnen haben weiterhin Anspruch auf die Erstattung der Anwaltshonorare und
11  aller Kosten in vollständiger Höhe gemäß 17 U.S.C. § 1203(b).

12

13                              **KLAGEPUNKT II**
14                    **Vorsätzliche Störung von Vertragsbeziehungen**

15      53.     Die Klägerinnen nehmen das Vorbringen in den Ziffern 1 bis 52 hier durch
16  Bezugnahme vollinhaltlich auf.

17      54.     Wie im vorliegenden Dokument beschrieben müssen lizenzierte Nutzer in den
18  Vereinigten Staaten, damit sie PUBGM installieren und spielen können, zuerst den
19  Nutzungsbedingungen zustimmen, die einen verbindlichen, gültigen und durchsetzbaren Vertrag
20  zwischen Tencent und Spielern von PUBGM darstellen.

21      55.     Die Verträge von Tencent mit ihren Nutzern sind gültig und durchsetzbar.

22      56.     Jedes Mal, wenn ein Käufer der Cheat-Software die Cheat-Software im Zusammenhang
23  mit PUBGM verwendet, verstößt er gegen die Nutzungsbedingungen. Die Klägerinnen machen nach
24  bestem Wissen und Gewissen geltend, dass Tausende solcher Verstöße durch die Kunden der Beklagten
25  verübt wurden.

26      57.     Die Klägerinnen machen nach bestem Wissen und Gewissen geltend, dass den
27  Beklagten aufgrund ihrer eigenen Konten sowohl die Existenz der Verträge zwischen Tencent und ihren
28  Nutzern in den Vereinigten sowie deren spezifische Bestimmungen, einschließlich der
29  Nutzungsbedingungen, bekannt sind und ihnen zusätzlich die Existenz und der Inhalt des
30  Verhaltenskodex bekannt sind. Insbesondere wussten die Beklagten, dass die Nutzungsbedingungen
31

Mitchell
Silberberg &
Knupp LLP

12945486.4

1  und der Verhaltenskodex Spielern die Verwendung der Cheat-Software untersagen. Nichtsdestotrotz
2  ermutigen und verleiten die Beklagten Nutzer von PUBGM zum Kauf und zur Nutzung der Cheat-
3  Software in dem Wissen, dass die Nutzung dieser Produkte durch ihre Kunden einen Verstoß gegen die
4  Verträge dieser Kunden mit Tencent bedeutet.

5      58.   Indem sie die Nutzer der Klägerinnen zum Verstoß gegen ihre Verträge und verleiten,
6  haben die Beklagten vorsätzlich die Verträge zwischen Tencent und ihrer Nutzer gestört und fahren fort,
7  diese zu stören.

8      59.   Als ein direkte und unmittelbare Folge der Handlungen der Beklagten erlitten die
9  Klägerinnen Schäden in einer während der Verhandlung nachzuweisenden Höhe, dazu gehört unter
10  anderem der Verlust von Firmenwert unter den Nutzern von Spielen der Klägerinnen, die Bindung von
11  Ressourcen der Klägerinnen in dem Versuch, die Verwendung von Cheat-Software zu erkennen und zu
12  verhindern, verminderte Gewinne und entgangene Gewinne von Nutzern, deren Konten die Klägerinnen
13  aufgrund der Verletzung der Nutzungsbedingungen und des Verhaltenskodex in den Vereinigten Staaten
14  gekündigt haben.

15     60.   Als weitere Folge der Handlungen der Beklagten haben die Beklagten rechtswidrig im
16  Einzelnen identifizierbares Eigentum erworben, das aus allen Erlösen besteht, die dem Verkauf der
17  Cheat-Software in den Vereinigten Staaten und weiteren Produkten oder Dienstleistungen zuzuschreiben
18  sind, die die Rechte der Klägerinnen verletzen, sowie aus etwaigem zusätzlichem Eigentum besteht, das
19  auf solche Erlöse zurückzuführen ist. Jene Erlöse, die direkt der Manipulation und dem Missbrauch von
20  PUBGM durch die Beklagten und ihrer vorsätzlichen Störung der Verträge von Tencent zuzuschreiben
21  sind, gehören rechtmäßig und billigerweise den Klägerinnen.

22     61.   Die vorsätzliche Störung der Verträge zwischen Tencent und ihren lizenzierten Nutzern
23  in den Vereinigten Staaten durch die Beklagten berechtigt die Klägerinnen zu Rechtsschutz durch
24  Unterlassungsverfügung und zu kompensatorischem Schadenersatz, zur Auflage eines gesetzlichen
25  Treuhandverhältnisses (Constructive Trust) über die rechtswidrig durch die Beklagten erworbenen Erlöse
26  sowie zu weiteren verfügbaren Rechtsbehelfen.

27     62.   Die Beklagten haben sich der Unterdrückung, des Betrugs oder der Böswilligkeit
28  schuldig gemacht und die Klägerinnen haben zusätzlich zum kompensatorischen Schadenersatz ein
29  Anrecht auf die Zuerkennung von verschärften Schadensersatz und Strafschadensersatz gegen die
30  Beklagten.

## KLAGEPUNKT III

### Unlauterer Wettbewerb

63.     Die Klägerinnen nehmen das Vorbringen in den Ziffern 1 bis 62 hier durch Bezugnahme vollinhaltlich auf.

64.     Die Handlungen und das Verhalten der Beklagten stellen unlauteren Wettbewerb in den Vereinigten Staaten gemäß dem California Business & Professions Code § 17200 ff. [Unternehmens- und Berufsgesetz des US-Bundesstaats Kalifornien] und gemäß dem Gewohnheitsrecht von Kalifornien dar.

65.     Als ein direktes und unmittelbares Ergebnis des unlauteren Wettbewerbs der Beklagten in den Vereinigten Staaten wurden die Klägerinnen geschädigt und die Beklagten haben sich in einer bei der Verhandlung nachzuweisenden Höhe ungerechtfertigt bereichert, wofür Schadenersatz und/oder Wiedergutmachung und Abschöpfung angemessen sind. Solcher Schadenersatz und/oder Wiedergutmachung und Abschöpfung sollten eine Erklärung durch dieses Gericht einschließen, dass die Beklagten gesetzliche Treuhänder zugunsten der Klägerinnen sind, und einen Beschluss einschließen, dass die Beklagten den Klägerinnen die Bruttoeinnahmen übergeben müssen, die erstere erhalten haben oder erhalten werden, die dem Verkauf der Cheat-Software in Vereinigten Staaten zuzuschreiben sind.

66.     Die Beklagten haben sich der Unterdrückung, des Betrugs oder der Böswilligkeit schuldig gemacht und die Klägerinnen haben zusätzlich zum adäquaten Schadenersatz ein Anrecht auf die Zuerkennung von verschärften Schadensersatz und Strafschadensersatz gegen die Beklagten.

67.     Als Folge der Handlungen und Verhaltensweisen der Beklagten in den Vereinigten Staaten haben die Klägerinnen einen erheblichen, unmittelbaren und irreparablen Schaden erlitten und werden diesen weiter erleiden, für den es nach dem Gesetz keinen angemessenen Rechtsbehelf gibt. Die Klägerinnen machen nach bestem Wissen und Gewissen geltend, dass, sofern dieses Gericht dies nicht untersagt und unterbindet, die Beklagten sich weiterhin des unlauteren Wettbewerbs befleißigen werden. Gemäß dem California Business & Professions Code § 17203 haben die Klägerinnen ein Anrecht auf vorübergehende, vorläufige oder endgültige Verfügungen, die weitere unlautere Wettbewerbshandlungen verbieten.

**KLAGEANTRAG**

AUS DIESEM GRUND bitten die Klägerinnen dieses Gericht um ein Urteil zu ihren Gunsten für jede der vorstehend dargestellten Forderungen nach Rechtsbehelf und um Zusprechung unter anderem der folgenden Rechtsbehelfe:

1.     Ein vorläufiges und dauerhaftes Verbot, das es den Beklagten, ihren Führungskräften, Mitarbeitern, Bevollmächtigten, Tochtergesellschaften, Vertretern, Vertriebspartnern, Händlern, Gesellschaftern, verbundenen Unternehmen und allen gemeinschaftlich oder unter Beteiligung mit den Beklagten handelnden Personen untersagt: (i) in den Vereinigten Staaten illegalen Handel mit Umgehungsmitteln zu treiben; (ii) vorsätzlich die Verträge von Tencent mit Spielern in den Vereinigten Staaten zu stören und (iii) sich in den Vereinigten Staaten des unlauteren Wettbewerbs zu bedienen.

2.     Die Anordnung, dass die Beklagten die Cheat-Software und sämtliche sklavischen Kopien derselben, die an einer beliebigen Domain, Adresse, an einem beliebigen Standort oder bei einem beliebigen Internetdienstanbieter gehostet werden, aus dem Verkehr ziehen müssen.

3.     Die Anordnung, dass die Beklagten den Klägerinnen alle Kopien der Materialien übergeben müssen, die gegen etwaige Rechte der Klägerinnen, so wie im vorliegenden Dokument beschrieben, verstoßen oder diese Rechte verletzen.

4.     Die Anordnung, dass die Beklagten den Klägerinnen eine Aufstellung aller und sämtlicher Verkäufe von Produkten oder Dienstleistungen in den Vereinigten Staaten vorlegen, welche gegen die Rechte der Klägerinnen, so wie im vorliegenden Dokument beschrieben, verstoßen oder diese Rechte verletzen.

5.     Die Zuerkennung des höchstmöglichen gesetzlichen Schadenersatzes für einen Verstoß gegen Section 1201 DMCA, wie angemessen, gemäß 17 U.S.C. § 1203(c) an die Klägerinnen.

6.     Die Zuerkennung der Erstattung der Anwaltshonorare in diesem Verfahren gemäß 17 U.S.C. § 1203(b) bzw. anderen geltenden Gesetzen sowie angemessene Zinsen für die Zeit vor und nach dem Urteil an die Klägerinnen.

7.     Die Zuerkennung von verschärftem Schadensersatz und Strafschadensersatz an die Klägerinnen für den Klagegrund der Klägerinnen im Hinblick auf die vorsätzliche Störung von Vertragsbeziehungen gegen die Beklagten.

8.     Die Zuerkennung der Rückgabe der rechtswidrigen Erlöse der Beklagten an die Klägerinnen, einschließlich einer Aufstellung aller und sämtlicher Verkäufe der Cheat-Software in den

Vereinigten Staaten und/oder solcher Produkte oder Dienstleistungen, welche gegen die Rechte der Klägerinnen verstoßen.

9.    Die Auflage zur Errichtung eines gesetzlichen Treuhandverhältnisses (Constructive Trust) über die rechtswidrig durch die Beklagten aus dem Verkauf der Cheat-Software und/oder solcher Produkte oder Dienstleistungen erzielten Erlöse, welche gegen die Rechte der Klägerinnen verstoßen, so wie im vorliegenden Dokument beschrieben.

10.    Die Zuerkennung solcher anderen und weiteren Rechtsbehelfe, die das Gericht für gerecht und angemessen erachtet.

DATUM: 5. März 2021                                    MITCHELL SILBERBERG & KNUPP LLP


                                                                 Durch: */gez./* Marc E. Mayer
                                                                          Marc E. Mayer
                                                                          Karin G. Pagnanelli
                                                                          Anwälte der Klägerinnen

Mitchell
Silberberg &
Knupp LLP

21

12945486.4

1  MARC E. MAYER (SBN 190969)
     mem@msk.com
2  KARIN G. PAGNANELL (SBN 174763)
     kgp@msk.com
3  MITCHELL SILBERBERG & KNUPP LLP
  2049 Century Park East, 18th Floor
4  Los Angeles, CA 90067-3120
  Telephone: (310) 312-2000
5  Facsimile: (310) 312-3100

6  Attorneys for Plaintiffs

7

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10          WESTERN DIVISION - SPRING STREET

| 11 | PROXIMA BETA PTE. LIMITED,<br>d/b/a "Tencent Games" a Singapore | CASE NO. 2:21-cv-2056 |
|---|---|---|
| 12 | Corporation, and KRAFTON, INC., a<br>Korea Corporation, | **CERTIFICATE OF INTERESTED**<br>**PARTIES AND CORPORATE** |
| 13 | Plaintiffs, | **DISCLOSURES** |
| 14 | | [Local Rule 7.1-1; Fed. R. Civ. Pro. 7.1] |
| 15 | v. | |
| 16 | ANDREW MARTIN a/k/a Asyhole;<br>ANDRE SWIRSZCZUK a/k/a | |
| 17 | Girabaldi; SAMAD AHMED a/k/a<br>Samad Hossain a/k/a Haxsamad, a/k/a<br>Sharpshooter Bangladesh and DOES 1 | |
| 18 | through 6, inclusive, | |
| 19 | Defendants. | |
| 20 | | |

21       Pursuant to Local Rule 7.1-1 and Federal Rule of Civil Procedure 7.1, the

22  undersigned, counsel of record for Proxima Beta PTE, Limtied d/b/a "Tencent

23  Games" ("Tencent") and Krafton, Inc. ("Krafton") (collectively, "Plaintiffs"), by

24  and through its undersigned counsel, provide the following Certificate of Interested

25  Parties and Corporate Disclosure Statement pursuant to Rule 7.1 of the Federal

26  Rules of Civil Procedure and Local Rule 7.1-1:

27

28

Mitchell
Silberberg &
Knupp LLP
12929225.1

1.      Proxima Beta PTE Limited is a fully owned subsidiary of Tencent Holdings Limited ("Tencent"), a publically held Chinese company.  No additional parent corporation or publically traded company owning 10% or more of its stock.

2.      Tencent Holdings Limited ("Tencent"), a publically held Chinese company, owns more than 10% of Krafton, Inc. through Tencent's subsidiaries.

DATED: March 5, 2021          MITCHELL SILBERBERG & KNUPP LLP


By:   /s/ Marc E. Mayer
       Marc E. Mayer
       Karin G. Pagnanelli
       Attorneys for Plaintiffs

Mitchell
Silberberg &
Knupp LLP

12929225.1

2

MARC E. MAYER (Zulassungsnr. 190969)
  mem@msk.com
KARIN G. PAGNANELLI (Zulassungsnr. 174763)
  kgp@msk.com
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, CA 90067-3120
Telefon: (310) 312-2000
Fax: (310) 312-3100

Anwälte der Klägerinnen

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION – SPRING STREET

[in etwa: US-Bezirksgerichts für den Bezirk Central von Kalifornien, Abteilung West – Spring Street]

| | |
|---|---|
| PROXIMA BETA PTE. LIMITED, mit dem angenommenen Geschäftsnamen „Tencent Games“ eine nach dem Recht von Singapur gegründete Gesellschaft, und KRAFTON, INC., eine nach koreanischem Recht gegründete Gesellschaft<br><br>Klägerinnen<br><br>gegen<br><br>ANDREW MARTIN alias Asyhole; ANDRE SWIRSZCZUK alias Girabaldi; SAMAD AHMED alias Samad Hossain alias Haxsamad, alias Sharpshooter Bangladesh und die nicht namentlich benannten Personen zu 1) bis einschließlich zu 6,)<br><br>Beklagte | AKTENZEICHEN 2:21-cv-2056<br>**BESTÄTIGUNG DER VERFAHRENSBETEILIGTEN UND ANGABEN ZU DEN EIGENTUMSVERHÄLTNISSEN DER GESELLSCHAFTEN**<br>[Local Rule 7.1-1; Fed. R. Civ. Pro. 7.1] |

Gemäß Local Rule 7.1-1 [örtliche Verfahrensregeln] und Federal Rule of Civil Procedure 7.1 [US-Zivilprozessordnung] legt der Unterzeichnende, als prozessbevollmächtigter Anwalt der Proxima Beta PTE, Limited mit dem angenommenen Geschäftsnamen „Tencent Games“ („Tencent“) und der Krafton, Inc. („Krafton“) (zusammen die „Klägerinnen“) durch den unterzeichnenden Rechtsanwalt die folgende Bestätigung der Verfahrensbeteiligten und die Erklärung zu den Eigentumsverhältnissen der Gesellschaften gemäß Rule 7.1 der Federal Rules of Civil Procedure und Local Rule 7.1-1 vor:

1

2        1.     Die Proxima Beta PTE Limited ist eine hundertprozentige Tochtergesellschaft der

3  Tencent Holdings Limited („Tencent"), einer börsennotierten chinesischen Gesellschaft. Keine

4  zusätzliche Muttergesellschaft oder börsennotierte Gesellschaft besitzt 10 % oder mehr ihrer Aktien.

5        2.     Die Tencent Holdings Limited („Tencent"), eine börsennotierte chinesische

6  Gesellschaft, besitzt über die Tencent-Tochtergesellschaften mehr als 10 % der Krafton, Inc.

7

8  DATUM: 5. März 2021              MITCHELL SILBERBERG & KNUPP LLP

9

10                            Durch: */gez./* Marc E. Mayer

11                                 Marc E. Mayer

12                                 Karin G. Pagnanelli

13                                 Anwälte der Klägerinnen

14

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ )
PROXIMA BETA PTE. LIMITED, d/b/a "Tencent Games" a Singapore Corporation, and KRAFTON, INC., a Korea Corporation

**DEFENDANTS (** Check box if you are representing yourself ☐ )
ANDREW MARTIN a/k/a Asyhole; ANDRE SWIRSZCZUK a/k/a Girabaldi; SAMAD AHMED a/k/a Samad Hossain a/k/a Haxsamad, a/k/a Sharpshooter Bangladesh and DOES 1 through 6, inclusive,

**(b) County of Residence of First Listed Plaintiff** _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant Los Angeles County
*(IN U.S. PLAINTIFF CASES ONLY)*

**(c) Attorneys** *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.
Marc E. Mayer (SBN 190969)
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, CA 90067-3120 Telephone: (310) 312-2000

**Attorneys** *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☒ 3. Federal Question (U.S. Government Not a Party)

☐ 2. U.S. Government Defendant

☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding
☐ 2. Removed from State Court
☐ 3. Remanded from Appellate Court
☐ 4. Reinstated or Reopened
☐ 5. Transferred from Another District (Specify)
☐ 6. Multidistrict Litigation - Transfer
☐ 8. Multidistrict Litigation - Direct File

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No ☒ **MONEY DEMANDED IN COMPLAINT:** $ To be proven

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Trafficking in Circumvention Devices in violation of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1201(b)(1).

**VII. NATURE OF SUIT** (Place an X in one box only).

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☒ 820 Copyrights |
| ☐ 376 Qui Tam (31 USC 3729(a)) | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions. | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 400 State Reapportionment | ☐ 130 Miller Act | ☐ 290 All Other Real Property | **TORTS** | ☐ 510 Motions to Vacate Sentence | ☐ 835 Patent - Abbreviated New Drug Application |
| ☐ 410 Antitrust | ☐ 140 Negotiable Instrument | **TORTS** | **PERSONAL PROPERTY** | ☐ 530 General | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | ☐ 370 Other Fraud | ☐ 535 Death Penalty | ☐ 880 Defend Trade Secrets Act of 2016 (DTSA) |
| ☐ 450 Commerce/ICC Rates/Etc. | | ☐ 310 Airplane | ☐ 371 Truth in Lending | **Other:** | |
| ☐ 460 Deportation | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 380 Other Personal Property Damage | ☐ 540 Mandamus/Other | **SOCIAL SECURITY** |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 385 Property Damage Product Liability | ☐ 550 Civil Rights | ☐ 861 HIA (1395ff) |
| ☐ 480 Consumer Credit | | ☐ 330 Fed. Employers' Liability | **BANKRUPTCY** | ☐ 555 Prison Condition | ☐ 862 Black Lung (923) |
| ☐ 490 Cable/Sat TV | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | ☐ 422 Appeal 28 USC 158 | ☐ 560 Civil Detainee Conditions of Confinement | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | | ☐ 345 Marine Product Liability | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE/PENALTY** | ☐ 864 SSID Title XVI |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle | **CIVIL RIGHTS** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 865 RSI (405 (g)) |
| ☐ 891 Agricultural Acts | ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | ☐ 440 Other Civil Right | | **FEDERAL TAX SUITS** |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 690 Other | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | **LABOR** | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Accommodations | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 720 Labor/Mgmt. Relations | |
| ☐ 950 Constitutionality of State Statutes | ☐ 220 Foreclosure | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 446 American with Disabilities-Other | ☐ 740 Railway Labor Act | |
| | ☐ 230 Rent Lease & Ejectment | | ☐ 448 Education | ☐ 751 Family and Medical Leave Act | |
| | | | | ☐ 790 Other Labor Litigation | |
| | | | | ☐ 791 Employee Ret. Inc. Security Act | |

**FOR OFFICE USE ONLY:** Case Number: 2:21-cv-2056

CV-71 (10/20)    CIVIL COVER SHEET

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**VIII. VENUE**: Your answers to the questions below will determine the division of the Court to which this case will be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| QUESTION A: Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| ☐ Yes ☒ No | ☐ Los Angeles, Ventura, Santa Barbara, or San Luis Obispo | Western |
| If "no, " skip to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question E, below, and continue from there. | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | Eastern |

| QUESTION B: Is the United States, or one of its agencies or employees, a PLAINTIFF in this action?<br><br>☐ Yes ☒ No<br><br>If "no, " skip to Question C. If "yes," answer Question B.1, at right. | **B.1.** Do 50% or more of the defendants who reside in the district reside in Orange Co.?<br><br>*check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
| | | ☐ NO. Continue to Question B.2. |
| | **B.2.** Do 50% or more of the defendants who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.)<br><br>*check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| | | ☐ NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION C: Is the United States, or one of its agencies or employees, a DEFENDANT in this action?<br><br>☐ Yes ☒ No<br><br>If "no, " skip to Question D. If "yes," answer Question C.1, at right. | **C.1.** Do 50% or more of the plaintiffs who reside in the district reside in Orange Co.?<br><br>*check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
| | | ☐ NO. Continue to Question C.2. |
| | **C.2.** Do 50% or more of the plaintiffs who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.)<br><br>*check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| | | ☐ NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION D: Location of plaintiffs and defendants? | A.<br><br>Orange County | B.<br><br>Riverside or San Bernardino County | C.<br><br>Los Angeles, Ventura, Santa Barbara, or San Luis Obispo County |
|---|---|---|---|
| Indicate the location(s) in which 50% or more of *plaintiffs who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☐ | ☐ |
| Indicate the location(s) in which 50% or more of *defendants who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☐ | ☒ |

| D.1. Is there at least one answer in Column A? | D.2. Is there at least one answer in Column B? |
|---|---|
| ☐ Yes ☒ No | ☐ Yes ☒ No |
| If "yes," your case will initially be assigned to the<br>SOUTHERN DIVISION.<br>Enter "Southern" in response to Question E, below, and continue from there.<br>If "no," go to question D2 to the right. ➡ | If "yes," your case will initially be assigned to the<br>EASTERN DIVISION.<br>Enter "Eastern" in response to Question E, below.<br>If "no," your case will be assigned to the WESTERN DIVISION.<br>Enter "Western" in response to Question E, below. ⬇ |

| QUESTION E: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, C, or D above: ➡ | WESTERN |

| QUESTION F: Northern Counties? | |
|---|---|
| Do 50% or more of plaintiffs or defendants in this district reside in Ventura, Santa Barbara, or San Luis Obispo counties? | ☐ Yes ☒ No |

American LegalNet, Inc.
www.FormsWorkFlow.com

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**IX(a). IDENTICAL CASES**: Has this action been previously filed **in this court**?  ☒ NO  ☐ YES

If yes, list case number(s): _____

**IX(b). RELATED CASES**: Is this case related (as defined below) to any civil or criminal case(s) previously filed **in this court**?

☒ NO  ☐ YES

If yes, list case number(s): _____

**Civil cases** are related when they (check all that apply):

☐ A. Arise from the same or a closely related transaction, happening, or event;

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges.

Note: That cases may involve the same patent, trademark, or copyright is not, in itself, sufficient to deem cases related.

**A civil forfeiture case and a criminal case** are related when they (check all that apply):

☐ A. Arise from the same or a closely related transaction, happening, or event;

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. Involve one or more defendants from the criminal case in common and would entail substantial duplication of labor if heard by different judges.

---

**X. SIGNATURE OF ATTORNEY**
**(OR SELF-REPRESENTED LITIGANT)** :/s/ Marc E Mayer _____  DATE: March 5, 2021

**Notice to Counsel/Parties:** The submission of this Civil Cover Sheet is required by Local Rule 3-1. This Form CV-71 and the information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. For more detailed instructions, see separate instruction sheet (CV-071A).

---

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |

American LegalNet, Inc.
www.FormsWorkFlow.com

UNITED STATE DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
[in etwa: US-Bezirksgerichts für den Bezirk Central von Kalifornien]

DECKBLATT FÜR ZIVILVERFAHREN

**I. (a) KLÄGER/INNEN** (Kästchen ankreuzen, wenn Sie sich selbst vertreten ☐)

PROXIMA BETA PTE. LIMITED, mit dem angenommenen Geschäftsnamen „Tencent Games", eine nach dem Recht von Singapur gegründete Gesellschaft, und KRAFTON, INC., eine nach koreanischem Recht gegründete Gesellschaft

**(b)** Landkreis des Wohnorts des zuerst genannten Klägers

_____
*(AUSSER IN RECHTSSACHEN MIT US-KLÄGER)*

**(c) Rechtsanwälte** *(Kanzleiname, Adresse und Telefonnummer)* Wenn Sie sich selbst vertreten, tragen Sie bitte die entsprechenden Informationen ein.

Marc E. Mayer (Zulassungsnr. 190969)
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, CA 90067-3120 Telefon: +1 310 312-2000

**BEKLAGTE** (Kästchen ankreuzen, wenn Sie sich selbst vertreten ☐)

ANDREW MARTIN alias Asyhole; ANDRE SWIRSZCZUK alias Girabaldi; SAMAD AHMED alias Samad Hossain alias Haxsamad, alias Sharpshooter Bangladesh und die nicht namentlich benannten Personen zu 1) bis einschließlich zu 6), eingeschlossen,

Landkreis des Wohnorts des zuerst aufgeführten Beklagten — Los Angeles Landkreis
*(NUR IN RECHTSSACHEN MIT US-KLÄGER)*

**Rechtsanwälte** *(Kanzleiname, Adresse und Telefonnummer)* Wenn Sie sich selbst vertreten, tragen Sie bitte die entsprechenden Informationen ein.

**II. GRUNDLAGE DER ZUSTÄNDIGKEIT** (Bitte nur ein Kästchen ankreuzen)

☐ 1. Kläger US-Regierung

☐ 2. Beklagte US-Regierung

☒ 3. Einzelstaatl. Frage (U.S.-Regierung keine Partei)

☐ 4. Verschiedenheit der Staatszugehörigkeiten (Staatszugehörigkeit der Parteien in Punkt III angeben)

**III. STAATSANGEHÖRIGKEIT DER HAUPTPARTEIEN** – Nur für Fälle mit unterschiedlicher Ansässigkeit der Parteien [Diversity]
(Bitte ein Kästchen für den Kläger und eines für den Beklagten ankreuzen)

| | Klg. | Bekl. | | Klg. | Bekl. |
|---|---|---|---|---|---|
| Bürger dieses Bundesstaats | ☐ 1 | ☐ 1 | Unternehmens- oder Hauptgeschäftssitz in diesem Bundesstaat | ☐ 1 | ☐ 1 |
| Bürger eines anderen Bundesstaats | ☐ 2 | ☐ 2 | Gründung oder Hauptgeschäftssitz in einem anderen Bundesstaat | ☐ 2 | ☐ 2 |
| Bürger oder Untertan eines anderen Lands | ☐ 3 | ☐ 3 | Ausländische Nation | ☐ 3 | ☐ 3 |

**IV. URSPRUNG** (Nur ein Kästchen ankreuzen)

☒ 1. Ursprüngliches Verfahren
☐ 2. Vom einzelstaatl. Gericht abgegeben
☐ 3. Vom Berufungsgericht zurückverwiesen
☐ 4. Wieder aufgenommen oder erneut eröffnet
☐ 5. Aus einem anderen Bezirk verwiesen (bitte angeben)
☐ 6. Bezirksübergreifendes Verfahren – Übertragung
☐ 8. Bezirksübergreifendes Verfahren – Direkte Einreichung

**V. IN KLAGE BEANTRAGT: ANTRAG AUF SCHWURGERICHTSVERFAHREN:** ☒ Ja ☐ Nein („JA" nur ankreuzen, wenn in der Klageschrift beantragt)

**SAMMELKLAGE gemäß F.R.Cv.P. 23:** ☐ JA ☒ NEIN ☒ **IN DER KLAGESCHRIFT GEFORDERTER GELDBETRAG:** USD Ist noch nachzuweisen

**VI. KLAGEGRUND** (Zitieren Sie das U.S. Civil Statute, unter dem Sie die Klage einreichen, und schreiben Sie eine kurze Begründung. Zitieren Sie keine Bestimmung zur Zuständigkeit, sofern es sich nicht um einen Fall mit unterschiedlicher Ansässigkeit der Parteien handelt [Diversity].)

Illegaler Handel mit Umgehungsmitteln in Verstoß gegen den Digital Millennium Copyright Act („DMCA"), 17 U.S.C. § 1201(b)(1).

**VII. ART DES VERFAHRENS** (Nur ein Kästchen ankreuzen)

| SONSTIGE STATUTEN | VERTRAG | IMMOBILIEN FORTS. | EINWANDERUNG | GEFANGENEN-PETITIONEN | EIGENTUMSRECHTE |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Versicherung | ☐ 240 Grundstücksdelikte | ☐ 462 Einbürgerungsantrag | **Habeas Corpus:** | ☒ 820 Urheberrechte |
| ☐ 376 Qui Tam (31 USC 3729(a)) | ☐ 120 Marine | ☐ 245 Produkthaftungsdelikte | ☐ 465 Andere immigrationsbezogene Angelegenheiten | ☐ 463 Ausländischer Häftling | ☐ 830 Patent |
| ☐ 400 Sitzzuteilung für Staat | ☐ 130 Miller Act | ☐ 290 alle sonstigen Immobilien | | ☐ 510 Antrag auf Aufhebung des Urteils | ☐ 835 Patent – Abbreviated New Drug Application |
| ☐ 410 Kartellrecht | ☐ 140 Begebbare Wertpapiere | | | ☐ 530 Allgemein | ☐ 840 Marken |
| ☐ 430 Banken und Bankwesen | ☐ 150 Wiedereinziehung von Überzahlung u. Urteilsvollstreckung | | | ☐ 535 Todesstrafe | ☐ 880 Defend Trade Secrets Act of 2016 (DTSA) |
| ☐ 450 Handel/ICC-Raten/usw. | ☐ 151 Medicare Act | **DELIKTE PERSÖNLICHES EIGENTUM** | ☐ 370 Anderer Betrug | **Sonstiges:** | |
| ☐ 460 Abschiebung | ☐ 152 Einziehung von in Verzug stehenden Studentendarlehen (ohne ehem. Militärangeh.) | ☐ 310 Flugzeug | ☐ 371 Wahrhaftigkeit bei der Kreditvergabe | ☐ 540 Mandamus/Andere | **SOZIALVERSICHERUNG** |
| ☐ 470 Gesetz über ausbeuterische u. korrupte Org. | ☐ 153 Wiedereinziehung von Leistungen für ehem. Militärangeh. | ☐ 315 Flugzeug-Produkthaftung | ☐ 380 Andere Schäden am persönlichen Eigentum | ☐ 550 Bürgerrechte | ☐ 861 HIA (1395 ff) |
| ☐ 480 Verbraucherkredite | ☐ 160 Aktionärsklagen | ☐ 320 Angriff, Verleumdung u. üble Nachrede | ☐ 385 Produkthaftung für Sachschaden | ☐ 555 Haftbedingungen | ☐ 862 Staublunge (923) |
| ☐ 490 Kabel/Satteliten-TV | ☐ 190 Sonstiger Vertrag | ☐ 330 Bundesarbeitgeberhaftung | | ☐ 560 Haftbedingungen für Zivilgefangene | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 850 Wertpapiere/ Rohstoffe/Wertbörse | ☐ 195 Vertragliche Produkthaftung | ☐ 340 Marine | **INSOLVENZ** | | ☐ 864 SSID Title XVI |
| ☐ 890 Andere gesetzliche Maßnahmen | ☐ 196 Franchising | ☐ 345 Marine-Produkthaftung | ☐ 422 Berufung 28 USC 158 | **BESCHLAGNAHME/ VERTRAGSSTRAFE** | ☐ 865 RSI (405 (g)) |
| ☐ 891 Landwirtschaftsgesetze | | ☐ 350 Kraftfahrzeug | ☐ 423 Rücknahme28 USC 157 | ☐ 625 Drogenbedingte Einziehung von Eigentum 21 USC 881 | |
| ☐ 893 Umweltangelegenheiten | | ☐ 355 Kraftfahrzeug-Produkthaftung | | ☐ 690 Sonstiges | **BUNDESSTEUERVERFAHREN** |
| ☐ 895 Freedom of Info. Act | | ☐ 360 Andere Personenschäden | **BÜRGERRECHTE** | | ☐ 870 Steuern (U.S.-Kläger oder -Beklagter) |
| ☐ 896 Schiedsverfahren | | ☐ 362 Personenschäden – ärztl. Kunstfehler | ☐ 440 Andere Bürgerrechte | **ARBEITSRECHT** | ☐ 871 IRS-Drittpartei 26 USC 7609 |
| ☐ 899 Administrative Procedure Act/Überprüfung oder Beschwerde zu behördl. Entscheidung | | ☐ 365 Personenschäden – Produkthaftung | ☐ 441 Wahlrecht | ☐ 710 Fair Labor Standards Act | |
| ☐ 950 Verfassungsmäßigkeit von staatlichen Statuten | **IMMOBILIEN** | ☐ 367 Produkthaftung im Gesundheitswesen/Pharmazeutische Personenschäden | ☐ 442 Beschäftigung | ☐ 720 Arbeitnehmer/ Arbeitgeberbeziehungen | |
| | ☐ 210 Landenteignung | ☐ 368 Produkthaftung bei asbest-verursachten Personenschäden | ☐ 443 Wohnen/Unterkünfte | ☐ 740 Railway Labor Act | |
| | ☐ 220 Zwangsvollstreckung | | ☐ 445 Amerikaner mit Behinderungen – Beschäftigung | ☐ 751 Family and Medical Leave Act | |
| | ☐ 230 Miete, Pacht und Räumung | | ☐ 446 Amerikaner mit Behinderungen – Sonstiges | ☐ 790 Sonstige Arbeitsrechtsverfahren | |
| | | | ☐ 448 Bildung | ☐ 791 Employee Ret. Inc. Security Act | |

**NUR FÜR ADMINISTRATIVE ZWECKE:**

Aktenzeichen der Rechtssache: 2:21-cv-2056

American LegalNet, Inc.
www.FormsWorkFlow.com

UNITED STATE DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
[in etwa: US-Bezirksgerichts für den Bezirk Central von Kalifornien]

DECKBLATT FÜR ZIVILVERFAHREN

**VIII. ÖRTLICHE ZUSTÄNDIGKEIT:** Ihre Antworten auf die Fragen unten dienen zur Festlegung der Division des Gerichts, dem dieser Fall zuerst zugewiesen wird. Diese erste Zuweisung unterliegt dem Änderungsvorbehalt gemäß den allgemeinen Regeln des Gerichts nach Prüfung Ihrer Klage oder Rücknahmemitteilung durch das Gericht.

| FRAGE A: Wurde dieses Verfahren von einzelstaatl. Gericht abgegeben?<br>☐ Ja  ☒ Nein<br><br>Wenn „nein", gehen Sie zu Frage B. Wenn „Ja", das zutreffende Kästchen rechts ankreuzen, die entsprechende Division als Antwort auf Frage E unten eingeben und von dort aus fortfahren. | VERFAHREN AUF BUNDESSTAATEBENE WAR IM FOLGENDEN BEZIRK ANHÄNGIG:<br><br>☐ Los Angeles, Ventura, Santa Barbara oder San Luis Obispo<br>☐ Orange<br>☐ Riverside oder San Bernardino | ZUERST ZUSTÄNDIGE DIVISION IN CACD IST:<br><br>Western<br>Southern<br>Eastern |
|---|---|---|

| FRAGE B: Sind die Vereinigten Staaten oder eine(r) ihrer Institutionen bzw. Mitarbeiter ein/e KLÄGER(IN) in diesem Verfahren?<br>☐ Ja  ☒ Nein<br><br>Wenn „nein", gehen Sie zu Frage C. Wenn „ja", bitte Frage B.1 rechts beantworten. | **B.1.** Haben 50 % oder mehr der Beklagten, die im Bezirk ansässig sind, in Orange Co. ansässig?<br><br>*kreuzen Sie eines der Kästchen rechts an* ➡<br><br>**B.2.** Haben 50 % oder mehr der Beklagten, die im Bezirk ansässig sind, in den Counties Riverside und/oder San Bernardino ansässig? (Behandeln Sie beide Countys zusammen.)<br><br>*kreuzen Sie eines der Kästchen rechts an* ➡ | ☐ JA. Ihr Fall wird zuerst der Southern Division zugewiesen. Tragen Sie „Southern" als Antwort auf Frage E unten ein und fahren Sie von dort aus fort.<br><br>☐ NEIN. Weiter mit Frage B.2.<br>☐ JA. Ihr Fall wird zuerst der Eastern Division zugewiesen. Tragen Sie „Eastern" als Antwort auf Frage E unten ein und fahren Sie von dort aus fort.<br>☐ NEIN. Ihr Fall wird zuerst der Western Division zugewiesen. Tragen Sie „Western" als Antwort auf Frage E unten ein und fahren Sie von dort aus fort. |
|---|---|---|

| FRAGE C: Sind die Vereinigten Staaten oder eine(r) ihrer Institutionen bzw. Mitarbeiter ein/e BEKLAGTE/R in diesem Verfahren?<br>☐ Ja  ☒ Nein<br><br>Wenn „nein", gehen Sie zu Frage D. Wenn „ja", bitte Frage C.1 rechts beantworten. | **C.1.** Haben 50 % oder mehr der Beklagten, die im Bezirk ansässig sind, in Orange Co. ansässig?<br><br>*kreuzen Sie eines der Kästchen rechts an* ➡<br><br>**B.2.** Haben 50 % oder mehr der Beklagten, die im Bezirk ansässig sind, in den Counties Riverside und/oder San Bernardino ansässig? (Behandeln Sie beide Countys zusammen.)<br><br>*kreuzen Sie eines der Kästchen rechts an* ➡ | ☐ JA. Ihr Fall wird zuerst der Southern Division zugewiesen.<br>Tragen Sie „Southern" als Antwort auf Frage E unten ein und fahren Sie von dort aus fort.<br>☐ NEIN. Weiter mit Frage C.2.<br><br>☐ JA. Ihr Fall wird zuerst der Eastern Division zugewiesen. Tragen Sie „Eastern" als Antwort auf Frage E unten ein und fahren Sie von dort aus fort.<br>☐ NEIN. Ihr Fall wird zuerst der Western Division zugewiesen. Tragen Sie „Western" als Antwort auf Frage E unten ein und fahren Sie von dort aus fort. |
|---|---|---|

| FRAGE D: Sitz von Kläger(inne)n und Beklagten? | A.<br><br>Orange County | B.<br><br>Riverside oder San Bernardino County | C.<br>Los Angeles, Ventura, Santa Barbara oder San Luis Obispo County |
|---|---|---|---|
| Bitte den Ort(e) angeben, in denen 50 % oder mehr der *Kläger(innen), die in diesem Bezirk ansässig sind,* ansässig sind. (Bis zu zwei Kästchen ankreuzen oder Kästchen leer lassen, wenn keine Auswahl zutrifft.) | ☐ | ☐ | ☐ |
| Bitte den Ort(e) angeben, in denen 50 % oder mehr der *Beklagten, die in diesem Bezirk ansässig sind,* ansässig sind. (Bis zu zwei Kästchen ankreuzen oder Kästchen leer lassen, wenn keine Auswahl zutrifft.) | ☐ | ☐ | ☒ |

| D.1. Gibt es mindestens eine Antwort in Spalte A?<br>☐ Ja  ☒ Nein<br>Wenn „ja", wird Ihr Fall zuerst der SOUTHERN DIVISION zugewiesen.<br>Tragen Sie „Southern" als Antwort auf Frage E unten ein und fahren Sie von dort aus fort.<br><br>Wenn „nein", bitte zu Frage D2 rechts gehen. ➡ | D.2. Gibt es mindestens eine Antwort in Spalte B?<br>☐ Ja  ☒ Nein<br>Wenn „ja", wird Ihr Fall zuerst der EASTERN DIVISION zugewiesen.<br>Tragen Sie „Eastern" als Antwort auf Frage E unten ein.<br>Wenn „nein", wird Ihr Fall zuerst der WESTERN DIVISION zugewiesen.<br><br>Tragen Sie „Western" als Antwort auf Frage E unten ein. ⬇ |
|---|---|

| FRAGE E: Zuerst zuständige Division? | ZUERST ZUSTÄNDIGE DIVISION IN CACD |
|---|---|
| Die durch die Frage A, B, C oder D oben ermittelte zuerst zuständige<br>Division eintragen: ➡ | WESTERN |

| FRAGE F: Northern Countys? |
|---|
| Sind 50 % oder mehr der Kläger(innen) oder Beklagten, die in diesem Bezirk ansässig sind, in den Countys Ventura, Santa Barbara oder San Luis Obispo ansässig? ☐ Ja  ☒ Nein |

American LegalNet, Inc.<br>www.FormsWorkFlow.com

Verfahren 2:21-cv-02056 Dokument 3 Eingereicht am 05.03.2021 Seite 3 von 3 ID-Nr.: 26

UNITED STATE DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
[in etwa: US-Bezirksgerichts für den Bezirk Central von Kalifornien

DECKBLATT FÜR ZIVILVERFAHREN

**IX(a). IDENTISCHE FÄLLE:** Wurde diese Klage zuvor **in diesem Gericht** eingereicht?    ☒ NEIN    ☐ JA

Wenn ja, bitte das/die Aktenzeichen auflisten: _____

**IX(b). VERWANDTE FÄLLE:** Ist dieser Fall (wie unten definiert) mit einem/mehreren Zivil- oder Strafverfahren verwandt, das/die zuvor **bei diesem Gericht** eingereicht wurden?

☒ NEIN    ☐ JA

Wenn ja, bitte das/die Aktenzeichen auflisten: _____

**Zivilverfahren** sind verwandt, wenn (Zutreffendes ankreuzen):

☐ A. Sie aus den gleichen oder eng verwandten Transaktionen, Geschehnissen oder Vorkommnissen erwachsen;

☐ B. Um eine Entscheidung in Hinblick auf die gleichen oder substanziell verwandten bzw. ähnlichen Rechts- oder Sachfragen ersucht wird oder

☐ C. Aus anderen Gründen ihre Verhandlung vor verschiedenen Richtern zu erheblicher Doppelarbeit führen würde.

Anmerkung: Dass Fälle dieselben Patente, Marken oder Urheberrechte umfassen, reicht an sich dafür nicht aus, dass die Verfahren als verwandt gelten.

**Zivilverfahren zu Beschlagnahme und ein Strafverfahren** sind verwandt, wenn (Zutreffendes ankreuzen):

☐ A. Sie aus den gleichen oder eng verwandten Transaktionen, Geschehnissen oder Vorkommnissen erwachsen;

☐ B. Um eine Entscheidung in Hinblick auf die gleichen oder substanziell verwandten bzw. ähnlichen Rechts- oder Sachfragen ersucht wird oder

☐ C. Einen oder mehrere Beklagte aus dem Strafverfahren gemeinsam haben und ihre Verhandlung vor verschiedenen Richtern zu erheblicher Doppelarbeit führen würde.

---

**X. UNTERSCHRIFT DES ANWALTS**

**(ODER SICH SELBSTVERTRETENDE PROZESSPARTEI):** /s/ Marc E. Mayer    DATUM: 5. März 2021

**Hinweis an Anwälte/Parteien:** Die Einreichung dieses Deckblatts für Zivilverfahren ist gemäß Local Rule 3-1 [örtliche Verfahrensregeln] erforderlich. Dieses Formblatt CV-71 und die hierin enthaltenen Informationen ersetzen oder ergänzen weder die Einreichung und Zustellung von Schriftsätzen oder anderen Papieren, wie dies gesetzlich vorgeschrieben ist, außer wie in den örtlichen Gerichtsbestimmungen vorgesehen. Ausführlichere Anweisungen finden Sie auf dem separaten Anleitungsblatt (CV-071A).

---

Schlüssel für die statischen Codes im Zusammenhang mit Sozialversicherungsverfahren [Social Security]:

| Art des Falls | Code-Abkürzung | Substanzielle Erklärung zum Klagegrund |
|---|---|---|
| 861 | HIA | Alle Klagen auf Krankenversicherungsleistungen (Medicare) unter Title 18, Part A des Social Security Act in seiner jeweils gültigen Fassung. Dazu gehören auch Klagen durch Krankenhäuser, Pflegeeinrichtungen usw. auf Zertifizierung als Leistungserbringer für dieses Programm. (42 U.S.C. 1935FF(b)) |
| 862 | BL | Alle Klagen auf Leistungen bei „Staublunge" unter Title 4, Part B des Federal Coal Mine Health und gemäß Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | Alle durch krankenversicherte Mitarbeiter eingereichte Klagen auf Arbeitsunfähigkeitsleistungen unter Title 2 des Social Security Act in seiner jeweils gültigen Fassung; plus alle Klagen für Leistungen aus Kinderversicherungen aufgrund von Behinderung. (42 U.S.C. 405 (g)) |
| 863 | DIWW | Alle durch Witwen oder Witwer eingereichte Klagen auf Leistungen aufgrund von Behinderung unter Title 2 des Social Security Act in seiner jeweils gültigen Fassung; (42 U.S.C. 405 (g)) |
| 864 | SSID | Alle Klagen auf Zahlungen von ergänzendem Sozialeinkommen [Supplemental Social Security Income] aufgrund von Behinderung, die gemäß Title 16, Part A des Social Security Act in seiner jeweils gültigen Fassung eingereicht werden. |
| 865 | RSI | Alle Klagen auf Ruhestands- (aus Altersgründen) oder Hinterbliebenenrentenleistungen unter Title 2 des Social Security Act in seiner jeweils gültigen Fassung; (42 U.S.C. 405 (g)) |

American LegalNet, Inc.
www.FormsWorkFlow.com

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

CENTRAL DISTRICT OF CALIFORNIA

PROXIMA BETA PTE. LIMITED, d/b/a "Tencent
Games" a Singapore Corporation, and KRAFTON,
INC., a Korea Corporation,

*Plaintiff(s)*

v.

ANDREW MARTIN a/k/a Asyhole; ANDRE
SWIRSZCZUK a/k/a Girabaldi; SAMAD AHMED
a/k/a Samad Hossain a/k/a Haxsamad, a/k/a
Sharpshooter Bangladesh and DOES 1 through 6,
inclusive,

*Defendant(s)*

)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 2:21-cv-2056 -CAS (JEMx)

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

ANDRE SWIRSZCZUK a/k/a Girabaldi
Dr.-Wilhelm-Külz-Straße 12
07407, Rudolstadt, Germany

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Marc E. Mayer
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, CA 90067-3120

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Kiry K. Gray
*CLERK OF COURT*

Date: 03/08/2021

_____
*Signature of Clerk or Deputy Clerk*



AO 440 (Rev. 06/12) Summons in a Civil Action (Page 2)

Civil Action No. 2:21-cv-2056 -CAS (JEMx)

**PROOF OF SERVICE**
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____

☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____, a person of suitable age and discretion who resides there,

on *(date)* _____, and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____, who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____; or

☐ I returned the summons unexecuted because _____; or

☐ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 _____

I declare under penalty of perjury that this information is true.

Date: _____

_____
Server's signature

_____
Printed name and title

_____
Server's address

Additional information regarding attempted service, etc:



12929164.1


American LegalNet, Inc.
www.FormsWorkFlow.com

AO 440 (Rev. 6/12), Vorladung in Zivilverfahren

# UNITED STATES DISTRICT COURT
## for the
### CENTRAL DISTRICT OF CALIFORNIA
[in etwa: US-Bezirksgerichts für den Bezirk Central von Kalifornien]

| | |
|---|---|
| PROXIMA BETA PTE. LIMITED, mit dem angenommenen Geschäftsnamen „Tencent Games" eine nach dem Recht von Singapur gegründete Gesellschaft, und KRAFTON, INC., eine nach koreanischem Recht gegründete Gesellschaft<br>*Klägerinnen*<br><br>gegen<br><br>ANDREW MARTIN alias Asyhole; ANDRE SWIRSZCZUK alias Girabaldi; SAMAD AHMED alias Samad Hossain alias Haxsamad, alias Sharpshooter Bangladesh und die nicht namentlich benannten Personen zu 1) bis einschließlich zu 6)<br>*Beklagte* | } } } } } } } } } } } } } } } } | Zivilverfahren Nr. 2:21-cv-2056-CAS (JEMx) |

**VORLADUNG IN ZIVILVERFAHREN**

An: *(Name und Adresse des Beklagten)*

ANDRE SWIRSZCZUK alias Girabaldi
Dr.-Wilhelm-Külz-Straße 12
07407 Rudolfstadt
Bundesrepublik Deutschland

       Gegen Sie wurde eine Klage eingereicht.

       Innerhalb von 21 Tagen nach Zustellung dieser Vorladung an Sie (nicht eingerechnet der Tag, an dem Sie diese erhalten haben) – oder innerhalb von 60 Tagen, wenn Sie die Vereinigten Staaten oder eine Institution der Vereinigten Staaten oder ein Beamter bzw. Angestellter der Vereinigten Staaten, wie in Fed. R. Civ P. 12 (a)(2) oder (3) [US-Zivilprozessordnung] beschrieben, sind – müssen Sie der Klägerin eine Erwiderung auf die beigefügte Klageschrift oder einen Antrag gemäß Rule 12 der Federal Rules of Civil Procedure [Verfahrensregel 12, US-Zivilprozessordnung] zustellen. Die Erwiderung bzw. der Antrag müssen der Klägerin oder dem Anwalt der Klägerin zugestellt werden, deren Name und Adresse lauten

Marc E. Mayer
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, CA 90067-3120 [USA]

       Falls Sie es versäumen zu antworten, wird ein Versäumnisurteil gegen Sie für den in der Klageschrift geforderten Rechtsbehelf ergehen. Sie müssen zudem Ihre Erwiderung bzw. Ihren Antrag bei Gericht einreichen.

| | |
|---|---|
| | Kiry K. Gray<br>CLERK OF COURT*) | [runder Stempel mit Vorderseite des großen Siegels der Vereinigten Staaten, umlaufende Beschriftung]<br>UNITED STATES DISTRICT COURT CENTRAL DISTRICT OF CALIFORNIA |

Datum: <u>08.03.2021</u>

[unleserliche Unterschrift]
*Unterschrift des Clerk oder stellvertretenden Clerk*

12929164.1

American LegalNet, Inc
http://www.formsworkflow.com/

*) Leiter der Gerichtskanzlei

AO 440 (Rev. 6/12), Vorladung in Zivilverfahren (Seite 2)

Zivilverfahren Nr. 2:21-cv-2056-CAS (JEMx)

### Zustellungsnachweis

*(Dieser Abschnitt ist nicht bei Gericht einzureichen, es sei denn, dies ist durch Fed. R. Civ. P. 4 (l) [US-Zivilprozessordnung] vorgesehen)*

Diese Vorladung für *(Name und Titel, falls zutreffend, der natürlichen Person)* _____

habe ich erhalten am *(Datum)* _____

☐ Ich habe die Vorladung persönlich der natürlichen Person in *(Ort)* _____
_____ am *(Datum)* _____ zugestellt; oder

☐ Ich habe die Vorladung am Wohnsitz der natürlichen Person oder an deren gewöhnlichem Aufenthaltsort bei *(Name)*
_____ hinterlegt, wobei es sich um eine Person geeigneten Alters und Urteilsvermögens handelt, die hier wohnt,
am *(Datum)* _____, und eine Kopie an die letzte bekannte Adresse der natürlichen Person mit der Post geschickt; oder

☐ Ich habe die Vorladung *(Name der natürlichen Person)* _____ zugestellt, die kraft Gesetzes
befugt ist, die Zustellung gerichtlicher Dokumente anzunehmen im Namen von *(Name der Organisation)* _____
_____ am *(Datum)* _____; oder

☐ Ich habe die Vorladung als nicht zugestellt zurückgeschickt, weil _____; oder

☐ Sonstiges *(Bitte erläutern)*

Meine Gebühren betragen _____ USD für Fahrtkosten und _____ USD für die Zustellung, von insgesamt 0.00 USD

Ich erkläre hiermit unter Strafe bei Meineid, dass diese Angaben der Wahrheit entsprechen.

Datum _____

_____
*Unterschrift des Zustellers*

_____
*Name und Titel in Druckbuchstaben*

_____
*Adresse des Zustellers*

Zusätzliche Informationen im Hinblick auf eine versuchte Zustellung usw.:

12929164.1

American LegalNet, Inc
http://www.formsworkflow.com/